UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAFFI STEPANIAN

                      Plaintiff,

      -against-

THE CITY OF NEW YORK ("THE CITY"), et al.,

NYPD P.O. MARTINEZ, SHIELD # 10239,

NYPD P.O. John Creighton, Shield # 464

NYPD P.O. Fredrick Crump, Shield # 11841

NYPD P.O. John Goetz, Shield # 3619

individually and in their official capacities,
jointly and severally,

                      Defendants.

**THIRD AMENDED COMPLAINT
AND JURY DEMAND**

16-cv-9944 (GHW)(GWG)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: __
DATE FILED: 4|11|17

1. Pro se Plaintiff, Raffi Stepanian, complaining of Defendants, respectfully alleges as follows:

PRELIMINARY STATEMENT

2. Plaintiff asserts the following claims against the Defendants in the above-entitled action:

    1. Deprivation of rights 42 USC §1983;
    2. First Amendment
    3. 42 USC §1983: False Arrest
    4. False\Unlawful Imprisonment
    5. Assault And Battery
    6. Selective Enforcement
    7. Selective Prosecution
    8. 42 U.S.C. §1986: Refusing/Neglecting To Prevent
    9. 42 U.S.C. §§1985 (2): Conspiracy to Interfere with Civil Rights
  10. Abuse of Process
  11. Malicious Abuse of Process
  12. Libel
  13 Slander
  14. Defamation of Character
  15. Intentional Infliction of Emotional Distress
  16. Negligent Infliction of Emotional Distress
  17. 42 USC §1983: Failure to Properly Train
  18. 42 USC §1983: Failure to Supervise
  19. Fraudulent Concealment
  20. Violation of Civil Rights

3. Plaintiff brings this action for compensatory damages, punitive damages and injunctive and/or special relief, pursuant to 42 USC §1983, First Amendment, §§1985(2) & (3) and §1986 for violations of civil rights, as said rights are secured by said statutes and the Constitutions of the United States.

4.   Plaintiff brings this action for compensatory and punitive damages pursuant to the following New York Penal Law "§35.05(2)" -- Justification Defense of Necessity as an Emergency" and "§35.15 (1)" Justification; use of physical force in defense of a person.

## JURISDICTION

5.   This action is brought pursuant to 42 USC §1983, §1985(2), §1986 and the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

6.   Jurisdiction is founded upon 28 U.S.C. §1331, §1343 and,

7.   Jurisdiction for the supplemental pendent New York State claims are founded upon 28 U.S.C. §1367 authorized by F.R.Civ.P. 18(a), and arises under the doctrine of pendent jurisdiction as set forth in United Mine Workers v. Gibbs, 383 U.S. 715 (1966).

## VENUE

8.   Venue is properly laid in the Southern District of New York under 28 USC § 1391(b) which the claims arose.

## JURY DEMAND

9.   Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

10.  The Plaintiff herein, Mr. Raffi Stepanian, is a citizen of the United States, and at all relevant times a resident of the City and State of New York. Mr. Raffi Stepanian resides at 15-01 144th Street, Whitestone, New York, 11357.

11.  The Defendant herein, NYPD P.O. MARTINEZ, SHIELD # 10239, is a duly appointed Officer of The New York City 18th Precinct Police Department and a citizen of the United States, and at all relevant times a resident of the City and State of New York.

12.  The Defendant herein, NYPD P.O. John Creighton, Shield # 464, is a duly appointed Officer of The New York City 18th Precinct Police Department and a citizen of the United States, and at all relevant times a resident of the City and State of New York.

13.  The Defendant herein, NYPD P.O. Fredrick Crump, Shield # 11841, is a duly appointed Officer of The New York City 18th Precinct Police Department and a citizen of the United States, and at all relevant times a resident of the City and State of New York.

14.  The Defendant herein, NYPD P.O. John Goetz, Shield # 3619, is a duly appointed Officer of The New York City 18th Precinct Police Department and a citizen of the United States, and at all relevant times a resident of the City and State of New York.

15.  Defendant City of New York is a Municipal Corporation, organized under the laws of New York State. The City of New York is responsible for the unconstitutional customs, policies, procedures, and practices implemented through its

various agencies, agents, departments, and employees, and for injuries occasioned thereby. The City of New York is also the public employer of captioned Defendants and at all times relevant to this Complaint.

16. Plaintiff brings this action for compensatory damages, punitive damages and injunctive and/or special relief, pursuant to 42 USC §1983, First Amendment, §§1985(2) & (3) and §1986 for violations of civil rights, as said rights are secured by said statutes and the Constitution of the United States.

17. Defendants were each and all responsible, in whole and/or in part, for the planning and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

18. At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts and/or omissions.

19. Each Defendant is named and sued in their private, individual and/or official capacities.

20. Defendant THE CITY OF NEW YORK ("NYC") is a municipal entity created and authorized under the laws of the State of New York, with general offices located at City Hall, New York, New York 10007. New York City is authorized by law to maintain the New York City Police Department ("NYPD"), which acts as its agent in the area of law enforcement, and Defendant NYC is ultimately responsible for the NYPD and assumes the risks incidental to the maintenance of it and its employees.

21. At all times relevant herein, as set forth more fully below, Defendant NYC had de facto policies, practices, customs and usages of failing properly to train, screen, supervise, and discipline agents, employees, and police officers, and of failing to inform the individual defendants and their supervisors of their need to train, screen, supervise or discipline said Defendants, which were a direct and proximate cause of the unconstitutional conduct alleged herein and the damages attendant thereto.

22. At all times relevant herein, Defendants were duly sworn police officers of the NYPD and were acting under the supervision of said department and according to their official duties.

23. At all times relevant herein, Defendants, either personally, privately or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

24. Each and all of the acts of Defendants alleged herein were done by said Defendants while acting within the scope of and in furtherance of their employment by The CITY OF NEW YORK.

## FACTS

25.  On December 16, 2016 and individual named "Joe Governali" physically assaulted and repeatedly attacked, Pro Se Plaintiff, Raffi Stepanian in the building of 36 West 47Th Street, New York, New York, 10036 on the 15Th Floor.

26.  The Plaintiff was forced to physically defend against Governali's intentional attacks with Justification and Necessity, pursuant to New York Penal Laws "§§ 35.05(2)," Justification Defense of Necessity As An Emergency," "§35.15 (1)" Justification; Use of Physical Force In Defense of A Person."

27.  Following Governali's attack Plaintiff exited the 36 west 47 Street location and reported the incident to 911 from another telephone at 23 west 47 Street. Plaintiff waited for the police to arrive and reported the incident, upon their arrival.

### VIDEOS OF GOVERNALI'S ASSAULT, PLAINTIFF'S SELF DEFENSE & DEFENDANTS' ACTS

28.  Please refer to the following YouTube video link "a" to view Joe Governali's intentional assaults/attacks on the Defendant; Please also review video "b" demonstrating a police officer's acknowledgement of the videos and his statements, under color of law, at the following "YouTube" Internet addresses below:

> a. https://www.youtube.com/watch?v=36uz8UL_idA
> b. https://www.youtube.com/watch?v=q8FTHSymDjs

### ARRIVAL OF THE POLICE

29.  Plaintiff assisted the Defendants to the 36 West 47 Street building entrance and Plaintiff waited in the building lobby.

30.  There was an officer waiting in the building lobby that Plaintiff offered to show videos of the incident. The officer didn't care to see it and only glanced, without any interest. Plaintiff asked if he can smoke a cigarette outside, while waiting. The officer replied, "stay here don't go anywhere."

31.  Another officer then walked into the building and Plaintiff had his hands in his coat pockets. This officer said, "when you're talking to me, keep you're hands out of your pockets."

32.  Given both officers' statements, "stay here don't go anywhere" and "when you're talking to me, keep you're hands out of your pockets," the Plaintiff feared that he was going to be taken into custody.

33.  At this point Officer Martinez then entered the building. The officers escorted Plaintiff out of the building and Plaintiff started recording momentarily as a safeguard. That recording is "b" in the following link: https://www.youtube.com/watch?v=q8FTHSymDjs

34.  Video "b," demonstrates the officer replying to Plaintiff's concern of being arrested, "you might be. We're gonna have an investigation back at the precinct. The problem is the other guy [Governali] is bloody; you're not." This video also demonstrates Plaintiff informing the officer that Governali attacked him. The officer then asked to see the incident video(s) on Plaintiff's camera, for which he failed to investigate in their entirety. With regards to the alleged arrest the Plaintiff was placed under "you might be." "You might be," denotes insufficiency and doubt.

ALLEGED "INVESTIGATION AT THE PRECINCT"

35.   In video "b" the officer is heard saying, "were going to conduct an investigation at the precinct."

36.   By the rules set forth in Brady v. Maryland, the prosecution must disclose and prove review of Plaintiff's entire camera footage during an alleged investigation at the 18Th precinct. The prosecution must disclose and demonstrate an investigation by video surveillance footage of the 18Th Precinct and not the Plaintiff's YouTube videos. *See* United States v. Blanco, 103 #03-10390, 2004 U.S. App. Lexis 26815, 392 F.3d 382 (9th Cir. 2004), "exculpatory evidence cannot be kept out of the hands of the defense just because the prosecutor does not have it, where an investigating agency does. That would undermine Brady by allowing the investigating agency to prevent production by keeping a report out of the prosecutor's hands until the agency decided the prosecutor ought to have it, and by allowing the prosecutor to tell the investigators not to give him certain materials unless he asked for them." *See* "Giglio v. United States. 450 U.S. 150 (1972)."

37.   At no time did any officer ask to see the Plaintiff's videos at the 18Th precinct which were/are relevant material evidence exhibits. The Plaintiff was falsely arrested, imprisoned and deprived of his liberty without any probable cause – "you might be," while the deprivation of his liberty was in progress, without any probable cause or consent. *See*, "Brady v. Maryland, #490, 373 U.S. 83 (1963)," *See* "Kyles v. Whitley, #93-7927, 514 U.S. 419 (1995)," *See* "Giglio v. United States. 450 U.S. 150 (1972)." *See* "People v. Gray 150 Misc.2d 852 (1991)."

38.   When the Officers brought the Plaintiff to the 18Th precinct the Plaintiff was searched again, and placed into a holding cell and deprived of his liberty on the basis of the Officers' false pretenses to lure the Plaintiff into an unconstitutional deprivation of his rights and false arrest – "you might be." The Plaintiff was in illegal custody, placed into a holding cell for approximately 2 hours and thirty minutes, finger printed, photographed and asked to sign a DAT by officer Martinez, prior to being released at approximately 5:00 P.M. 12/16/16.

39.   Plaintiff recalled officer Martinez while detained in the 18Th Precinct holding cell and told Officer Martinez that he remembered him from the 62 West video that he posted to YouTube from March 31, 2016. Officer Martinez confirmed this fact and remembered the Plaintiff.   And the Plaintiff was never informed about his Miranda Rights. *See* Miranda v. Arizona, 384 U.S. 436 (1966).

40.   Officer Martinez, endorsed the DAT with his signature, alleging, attesting to a single false charge, "Penal Law 120.00 (01)" against the Plaintiff with reckless disregard for truth, without an investigation, malicious intent and deliberate indifference, as a retaliation for filming him on March 31, 2016, in addition to other Midtown North encounters.

41.   No Police Officer at the "Midtown North," 18Th Precinct requested to review Plaintiff's exculpatory videos. The Defendants camera was removed from the his coat pocket at the 18Th Precinct front desk and placed back into his coat pocket. The coat was then placed onto a bench adjacent to the holding cell for the duration of the Plaintiff's detention. The Plaintiff's camera was in his coat pocket from the moment Officer Martinez placed it back into Plaintiff's coat pocket and never reviewed for exculpatory evidence. Hence, there was no investigation. *See* "…At most, probable cause may be defeated if the officer "deliberately disregard[s] facts known to him which establish justification." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir.2003) (emphasis added). …the officer may not "deliberately disregard facts known to him which

establish" an exculpatory defense. Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003). Indeed, an officer's awareness of the facts supporting an exculpatory defense may eliminate probable cause. Id. at 135. Panetta v. Crowley, 460 F.3d 388, 398 (2d Cir.2006) ("Once an officer has probable cause, he or she is neither required nor allowed to continue investigating, sifting and weighing information.") (internal quotation marks omitted). At most, probable cause may be defeated if the officer "deliberately disregard[s] facts known to him which establish justification." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir.2003) (emphasis added)."

42.  By the rules set forth in CPL § 240.20, Brady v. Maryland, 373 US 83 (1963), and People v. Rosario, 9 NY2d 286 (1961) the prosecution must prove review of Plaintiff's entire camera footage during the course of an investigation at the 18Th precinct. And the prosecution must demonstrate and prove this by the video surveillance footage of the 18Th Precinct at best. _See_ United States v. Blanco, 103 #03-10390, 2004 U.S. App. Lexis 26815, 392 F.3d 382 (9th Cir. 2004), "exculpatory evidence cannot be kept out of the hands of the defense just because the prosecutor does not have it, where an investigating agency does. That would undermine Brady by allowing the investigating agency to prevent production by keeping a report out of the prosecutor's hands until the agency decided the prosecutor ought to have it, and by allowing the prosecutor to tell the investigators not to give him certain materials unless he asked for them."

43.  Plaintiff was separated and restricted from access to his camera that was in his coat pocket while illegally imprisoned and was, thus, deprived of his First Amendment right to film. _See_ Glik v. Cunniffe, 655 F.3d 78 (1st Cir. 2011) "A private citizen has the right to record video and audio of public officials in a public place … "

44.  Video "b," also demonstrates that the Police Officer stated "The problem is the other guy (Joe Governali) is bloody;" you're not." The officers completely disregarded the Plaintiff's videos to falsify charges of "Penal law 120.00  01, intentional assault in the third degree," for Plaintiff's self defense was justified and necessitated against Joe Governali's violent, malicious, hostile, biased and repeated, physical attacks that presented a direct threat to the Plaintiff's safety and well being. Plaintiff's video exhibits clearly demonstrate this, beyond a reasonable doubt.

45.  The Plaintiff was falsely arrested, unlawfully imprisoned, unlawfully searched, assaulted, battered and deprived of his rights by the officers' unconstitutional acts, failures to conduct proper investigations and disregarded to prevent the conspired acts against the Defendants protected constitutional rights.

46.  Defendants knew that the Plaintiff had videos and cannot deny knowledge that the Plaintiff informed them of such. _See_ video "b." The officers conspired to falsify charges against the Plaintiff, without any probable cause, outside of the scope of their duties to gain collateral objective outside of the legitimate ends of legal process and willfully and disregard existing exculpatory evidence to falsify charges, knowingly, willfully, intentionally, maliciously, illegally and with reckless disregard for truth. _See_ "A prosecutor has a duty to learn of favorable evidence known to other prosecution and investigative agencies acting on the prosecution's behalf, including police agencies." Kyles v. Whitley (1995) 514 U.S. 419, 437-438. _See_ "There is a duty on the part of the prosecution, even in the absence of a request therefore, to disclose all substantial material evidence favorable to an accused, whether such evidence relates directly to the question of guilt, to matters relevant to punishment, or to the credibility of a material witness." People v. Ruthford (1975) 14 Cal.3rd 399, 406. _See_ "The suppression of favorable evidence produces "prejudice" to a defendant only if the suppressed evidence is

"material." Evidence is "material" only if "'there is a reasonable probability' that the result of the trial would have been different if the suppressed [evidence] had been disclosed to the defense." Strickler v. Greene, supra. at pp. 289.

47. The officers failed to conduct impartial investigations to prevent the infringements against the Plaintiff's protected constitutional rights. The officers illegally subjected the Plaintiff to deprivations of his liberty, on the basis of false information that they acquiesced with and/or conspired to produce, without any probable cause. And the Plaintiff was never informed of his Miranda Rights. *See* Miranda v. Arizona, 384 U.S. 436 (1966).

48. The officers' acts against the Plaintiff were intentional, invidiously discriminatory and unconstitutional. *See* "…At most, probable cause may be defeated if the officer "deliberately disregard[s] facts known to him which establish justification." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir.2003) (emphasis added)….the officer may not "deliberately disregard facts known to him which establish" an exculpatory defense. Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003). Indeed, an officer's awareness of the facts supporting an exculpatory defense may eliminate probable cause. Id. at 135.Panetta v. Crowley, 460 F.3d 388, 398 (2d Cir.2006) ("Once an officer has probable cause, he or she is neither required nor allowed to continue investigating, sifting and weighing information.") (internal quotation marks omitted). At most, probable cause may be defeated if the officer "deliberately disregard[s] facts known to him which establish justification." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir.2003) (emphasis added)."

49. By established rules, the City must preserve and provide DANY with discoverable evidence, including, but not limited to, videotape, photographs, officer lists, recordings of police communications, and other evidence discoverable under CPL § 240.20, Brady v. Maryland, 373 US 83 (1963), and People v. Rosario, 9 NY2d 286 (1961). The City of New York/NYPD must demonstrate a review of Plaintiff's videos in the [detaining] 18Th Precinct to establish a full and impartial investigation and not the YouTube videos that Plaintiff posted after being released with the allegation, "NYPL 120.00 (01)" on the DAT. *See* United States v. Blanco, 103 #03-10390, 2004 U.S. App. Lexis 26815, 392 F.3d 382 (9th Cir. 2004), "exculpatory evidence cannot be kept out of the hands of the defense just because the prosecutor does not have it, where an investigating agency does. That would undermine Brady by allowing the investigating agency to prevent production by keeping a report out of the prosecutor's hands until the agency decided the prosecutor ought to have it, and by allowing the prosecutor to tell the investigators not to give him certain materials unless he asked for them."

50. "The U.S. Supreme Court, in the landmark case of Brady v. Maryland, #490, 373 U.S. 83 (1963), established clearly that prosecutors have an affirmative duty, as a matter of constitutional law, to disclose all known exculpatory evidence to the accused in a criminal proceeding. If the prosecution suppresses evidence favorable to an accused, it violates due process as guaranteed by the Fourteenth Amendment to the U.S. Constitution." *See* "2009 (9) AELE Mo. L. J. 101 ISSN 1935-0007 Civil Liability Law Section – September 2009 Civil Liability for Police Failure to Disclose Exculpatory Evidence: Brady v. Maryland: the Prosecutor's Duty The Duty to Disclose Applied to Law Enforcement."

51. Plaintiff's self defense was justified and necessary in consideration of the imminent danger/threat that Governali's direct attack(s) presented. Plaintiff's videos demonstrate Joe Governali as the repeat violent aggressor, repeatedly engaging in violent conduct, with planned, premeditated and executed attempts. Comparison of Plaintiff's videos demonstrate that the alleged statements documented on the accusatory instruments are fraudulent, misleading and inconsistent with existing facts. This is evident before, during and after the accusatory instrument was created,

notwithstanding the unconstitutional misconduct of the Defendants in the alleged investigation, arrest and prosecution of the Plaintiff.

52.  The Plaintiff was illegally ceased (told "you might be" [under arrest], see video "b" above), illegally searched, illegally handcuffed behind his back, illegally taken into custody, illegally seated into a marked unit with exculpatory video on the camera in his pocket that the officers disregarded to review.  On route to the precinct the officer in video "b" drove and Officer Martinez, shield # 10239, sat in the back with the Plaintiff.   The driver stated, "we're going to check you for any warrants at the precinct.  If there are no warrants we'll probably give you a DAT and release you."

<u>THE ALLEGED DESK APPEARANCE TICKET, DATED 12/16/16</u>

53.  The alleged DAT was issued to Plaintiff at the 18Th Precinct on 12/16/16 alleging, "PL 120.00 00(1)." The alleged accusatory instrument(s) is dated 12/27/16 with Defendant Martinez's signature.  Additional charges appeared on the accusatory instrument eleven days after. See DAT exhibit:



54. The Plaintiff was provided with a copy of the alleged Accusatory Instrument by Public Defender, "Alexandria Poole." See alleged Accusatory Instrument, below:

 

**VIDEO COMPARISON OF ALLEGED CHARGES ON DAT AND ACCUSATORY INSTRUMENT**

55. Please review video "a" in the YouTube link: https://www.youtube.com/watch?v=36uz8UL_idA

56. Regarding the beginning of above video "(a)" and "PL § 140.05 Trespass" charge/allegation:

   a). the Plaintiff rang the door bell.

   b). somebody from inside the office, buzzed the Plaintiff in and permitted him access into the office [According to information and belief Jeffery Dubester buzzed the door open for the Defendant]. Therefore, the Plaintiff did not Trespass.

   1). On December 16, 2016, after the Plaintiff was released from the 18Th Precinct he went back to 36 West 47Th Street and spoke with Jeffery Dubester to explain what happened. Jeffery Dubester stated that he opened ("buzzed") the door for the Plaintiff. The video demonstrates that the door buzzed, in response to ringing the doorbell before, entering

the office. The Door buzzed because Jeffery Dubester opened the door for the Plaintiff, according to information and belief.

57. Regarding the entirety of video "(a)" and "PL §240.26 harassment" charge/allegation:

a). Plaintiff asked Joe Governali, "what did you say to him [Jimmy], he's the only one allowed in, because I'm standing out there, is that what you said to him?"

b). Joe Governali, seated behind a desk replied, "but, who invited you here?"

c). Plaintiff then asked, "is this your office. Is this your office to say something like that?"

d). Joe Governali arose from his seat behind the desk and replied, "yes, yes it is, it's my office," directly approaching the Plaintiff with deliberate physical force, "I rent here."

e). Joe Governali shoved the Plaintiff out of the office with physical force. The Plaintiff repeatedly said, "take your hands off of me," and slapped Governali, while Governali shoved the Plaintiff out of the door.

f). Governali then said, "you just smacked me in the face."

g). Plaintiff replied, "that's right, keep your fucking hands off of me." Therefore, the Plaintiff did not "Trespass or Harass" and Joe Governali was the initial violent aggressor at all times.

h). Governali closed the door.

58. These recorded video facts were omitted from the accusatory instrument(s) to DANY. And the omissions demonstrate that Governali/Defendants withheld material information from DANY and Defendants failed to conduct investigations into exculpatory material facts that the Plaintiff furnished. *See* "Brady is violated when the government fails to turn over even evidence that is "known only to police investigators and not to the prosecutor." Youngblood v. West Virginia, 547 U.S. 867 (2006). *See*, "Brady v. Maryland, #490, 373 U.S. 83 (1963)," *See* "Kyles v. Whitley, #93-7927, 514 U.S. 419 (1995)," *See* "Giglio v. United States. 450 U.S. 150 (1972)." *See* "People v. Gray 150 Misc.2d 852 (1991)."

59. Comparing video "a" with the alleged accusatory instrument(s) proves that:

a). The Plaintiff rang the door bell. Therefore, Plaintiff did not Harass or Trespass against Governali.

b). Somebody from inside the office answered the doorbell, buzzed the door open and permitted the Plaintiff into the office [according to information and belief Jeffery Dubester buzzed the Plaintiff in]. Therefore, Plaintiff did not Harass or Trespass against Governali.

c). The video makes evident that the door buzzed open before Governali's very presence and witness. Therefore, Plaintiff did not Trespass. And Governali did not request of Plaintiff to leave the office.

1). On December 16, 2106, after the Plaintiff was released from the 18Th Precinct he went back to 36 West 47Th Street and spoke with Jeffery Dubester in the same office. Jeffery Dubester stated that he opened ("buzzed") the door for the Plaintiff. The video demonstrates that the door buzzed, and the Plaintiff legally entered the office. The door buzzed because Jeffery Dubester opened the door for the Plaintiff, according to information and belief. And Jeffery once again opened the door later that evening. Therefore, Plaintiff did not Harass or Trespass against Governali.

60. Accusatory instrument alleges "Governali asked Plaintiff to leave his office."

a). The video makes evident that Joe Governali did not "ask the Plaintiff to leave the office" at any time. Therefore, Plaintiff did not Trespass or Harass. And Governali did not request of Plaintiff to leave.

b). The video makes evident that the Plaintiff did not refuse to leave the office and Joe Governali physically shoved the Plaintiff out of the office. Therefore, Plaintiff did not Trespass or Harass. Governali did not request of Plaintiff to leave the office. And Plaintiff did not refuse to leave, as Governali never requested of Plaintiff to leave.

c). The video makes evident that the door buzzed open before Governali's very presence and witness. Therefore, Plaintiff did not Trespass.

61. Comparing entire video "(a)" with PL §120.00(01) and PL §120.00(02), PL §§110/120(01) charges/allegations:

a). Governali and Defendants disregarded and omitted material evidence and did not admit to engage in any physical contact, confrontation or altercation against the Plaintiff.

b). Governali and Defendants disregarded, omitted and withheld any reference of any and all physical contact, confrontation, altercation or attack against the Plaintiff, notwithstanding existing material video of Governali physically confronting and attacking the Plaintiff in the office and the staircase. The video also demonstrates that Governali stalked, pursued and attacked the Plaintiff in the staircase, outside of the office with premeditated intent.

    1). Therefore, Joe Governali and Defendants concealed Governali's violent attacks against the Plaintiff and intentionally conspired to submit and compound false information to DANY, without any investigative substantiation.

    2). Therefore, Plaintiff did not illegally, unjustly or unnecessarily intend assault or attempt assault upon Joe Governali. Plaintiff's right of self defense was justified and necessary against Governali's aggressive violence, aggression and physical attacks.

    3). Defendants [Officer Martinez] disregarded Plaintiff's video evidence, did not conduct any investigation of material facts and knowingly forged perjured allegations with reckless disregard.

c). reveals that Joe Governali physically confronted and attacked the Plaintiff with brutality, by his own volition, and violent conduct, in thought, word and deed, without any justification or necessity.

    1). Therefore, Defendants [Officer Martinez] disregarded Plaintiff's video evidence. Joe Governali concealed his violent attack(s) against the Plaintiff and colluded with false NYPD information to DANY.

    2). Plaintiff did not illegally, unjustly or unnecessarily intend assault or attempt assault upon Joe Governali. Plaintiff's right of self defense was justified and necessary.

    3). Defendants [Officer Martinez] disregarded Plaintiff's video evidence and did not conduct an investigation of material facts in any way shape or form.

d). Plaintiff's video recordings expose gross contradictions and inconsistencies, notwithstanding all conclusory, hearsay and forged allegations on the accusatory instrument. The allegations on the accusatory instrument are not consistent with Governali's video recorded statements, violent aggression and conduct. The allegations on the

accusatory instrument are contradicted by Plaintiff's material video recorded facts that Defendants disregarded, omitted and fraudulently concealed from DANY.

e). the accusatory instrument demonstrates the Defendants' failure to investigate and fraudulent, perjured, unsubstantiated, charges, allegations and

f). Governali's / Defendants' [Officer Martinez]'s intentional fraudulent concealment of material facts from DANY.

   1). Therefore, Joe Governali concealed his violent attack upon the Plaintiff and knowingly colluded with false instruments to DANY.

   2). Plaintiff did not illegally, unjustly or unnecessarily intend assault or attempt assault upon Joe Governali. Plaintiff's right of self defense was justified and necessary.

   3). Defendants [Officer Martinez] disregarded Plaintiff's video evidence and did not conduct investigations of material facts.

g). Joe Governali/Officer Martinez/Defendants deliberately disregarded material facts, acquiesced with perjured accusatory instrument(s) with intentional fraudulent, counterfeit, conclusory and hearsay allegations against the Plaintiff, without any veracity.

   1). Therefore, Joe Governali and Defendants knowingly falsified information to DANY with reckless disregard for truth and malicious indifference.

   2). Therefore, Plaintiff did not illegally assault or attempt assault upon Joe Governali. Plaintiff's right of self defense was justified and necessary.

   3). Defendants [Officer Martinez] disregarded Plaintiff's video evidence and did not report a single investigative finding of material facts to DANY. The entirety of charges and allegations are fraudulently perjured to DANY.

h). the Plaintiff obtained supporting eye witness account(s), in addition to the video recording that will establish that Joe Governali pursued, followed and stalked the Plaintiff with premeditated intent of physically assaulting him with violent brutality outside of the office, substantiated by the Plaintiff's video evidence in support.

   1). Therefore, Joe Governali and Defendants knowingly falsified information and accusatory instruments to DANY with reckless disregard for truth and malicious indifference.

   2). Plaintiff did not illegally assault or attempt assault upon Joe Governali. Plaintiff's right of self defense was justified and necessary.

   3). Defendants [Officer Martinez] knowingly disregarded Plaintiff's video evidence and did not conduct an investigation of existing, exculpatory material facts in any way, shape or form.

I). Plaintiff's video recordings of material facts support and found this complaint. The accusatory instrument fails to support the counterfeit allegations that Joe Governali/Defendants swore out and perjured to DANY with reckless indifference.

1). Therefore, Joe Governali and Defendants knowingly falsified information to DANY in malicious conspiracy against the Plaintiff's Protected Substantive and Procedural Due Process [Civil] Rights as guaranteed by the United States Constitution. *See* "The factual portion of a misdemeanor information charging multiple counts shall "consist of a single factual account applicable to all the counts of the accusatory part" and "[t]he factual allegations may be based either upon personal knowledge of the complainant or upon information and belief . . . [and] in order for an information or a count thereof to be sufficient on its face, every element of the offense charged and the defendant's commission thereof must be supported by non-hearsay allegations of such information and/or any supporting depositions" (CPL 100.15 [3]). "A misdemeanor complaint or a felony complaint, or a count thereof, is sufficient on its face when . . . "[i]t substantially conforms to the requirements prescribed in section 100.15; and People v. Hightower, 18 NY3d 249, 254 [2011]{**18 NY3d at 254} "[t]he allegations of the factual part of such accusatory instrument and/or any supporting depositions which may accompany it, provide reasonable cause to believe that the defendant committed the offense charged in the accusatory part of such instrument" (CPL 100.40 [4] [a], [b]). *See* "Only by the filing of an accusatory instrument with a criminal court may a criminal action be commenced (CPL §§1.20[16], 100.05; People v. Farkas, 16 NY3d 190, 193 [2011]). Obviously, a legally or facially insufficient accusatory instrument cannot be the basis to commence a criminal action. (See People v. Hightower, 18 NY3d 249, 254 [2011] [the failure of an accusatory instrument to allege facts, which provide reasonable cause to believe a defendant committed the offense charged, is a jurisdictional defect, "implicating the integrity of the process," and should be dismissed] [citations omitted])."

62. Defendants illegally falsified all charges upon the accusatory instrument(s) with deliberate indifference and reckless disregard for truth. The accusatory instrument, dated 12/27/16 was counterfeited with additional false charges eleven days after December 16, 2016. *See Kuehl v. Burris* 173 F.3d 646, 650 (8th Cir. 1999). The plaintiff, a store owner, got into an argument with a customer who claimed that she followed him around the store afraid that he would steal because he was an African-American. *Id.* at 648. There was conflicting testimony about who started the physical altercation. *Id.* at 648-49. The arresting officer ignored an eyewitness's attempt to recant the statement that plaintiff had slapped the customer, and refused to consider plaintiff's own statements or those of another witness favorable to her. *Id.* The court held that the officer was not entitled to qualified immunity, based on the plaintiff's allegations. *Id.* at 651. *See Id.* at 434 (quoting *Bagley*, 473 U.S. at 678). The Court specifically noted that a defendant does not have to establish by a preponderance of the evidence that the suppressed evidence would have resulted in an acquittal. *Kyles*, 514 U.S. at 434. The *Kyles* Court further explained that materiality is not a sufficiency of the evidence test, that is, a defendant does not have to show that there was insufficient evidence to convict after discounting the inculpatory evidence in the light of undisclosed exculpatory evidence. *Id.* at 434-35. It is enough to show that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 435. Once a reviewing court has found constitutional error based on the failure to disclose exculpatory evidence, there is no need for further harmless-error review. *Id.* at 435. This follows from the materiality test which itself requires that the evidence be sufficient to undermine confidence in the result of the trial.

(UNCONSTITUTIONAL) FALSE CHARGES ALLEGED UPON DAT & ACCUSATORY INSTRUMENT(S)

63.  The following accusations are alleged upon the DAT and Accusatory Instrument(s):

    (a).  "NYPL 120.00 00(1), Assault third degree (alleged upon the DAT issued 12/16/16)"

    (b).  "NYPL 120.00 00(2), Assault third degree (alleged on Accusatory Instrument 12/27/16)."

    (c).  "NYPL 110/120.00(1), Attempted assault third degree (alleged on Accusatory Instrument 12/27/16)."

    (d).  "NYPL140.05, Tresspass (alleged on Accusatory Instrument 12/27/16)."

    (e).  "NYPL 240.26(1), Harassment second degree (alleged on Accusatory Instrument 12/27/16)."

64.  Charge "(a)," above, was alleged on the DAT on 12/16/16.  Charges "(b) through (e) were not indicated on the DAT and appeared on the accusatory instrument eleven days after (12/27/16) and forged by Officer Martinez, Shield # 10239 and submitted to the District Attorney of New York ("DANY").

65.  The Plaintiff did not engage in any illegal conduct pursuant to NYPL "120.00 00(1), NYPL 120.00 00(2), NYPL 110/120.00(1), NYPL140.05, and NYPL 240.26(1)" or any other alleged charges corresponding with DAT # "018-01098" at any time.  The Defendants with malicious indifference and reckless disregard intentionally falsified all charges and intentionally disregarded their duty to conduct proper investigations before and after infringing upon Plaintiff's protected constitutional rights, without any probable cause or consent.

66.  18th Precinct Defendants are maliciously prejudiced against the Plaintiff and intentionally disregarded existing material video evidence to falsify charges (a) through (e), without any veracity, investigative findings or any probable cause.

67.  The unconstitutional arrest is based on the NYPD's false pretenses and prosecution of Plaintiff is based upon counterfeit, forged, false, fraudulent, misleading, conclusory and untrustworthy information lacking in any factual detail. *See Kuehl v. Burris* 173 F.3d 646, 650 (8th Cir. 1999). The plaintiff, a store owner, got into an argument with a customer who claimed that she followed him around the store afraid that he would steal because he was an African-American. *Id.* at 648. There was conflicting testimony about who started the physical altercation. *Id.* at 648-49. The arresting officer ignored an eyewitness's attempt to recant the statement that plaintiff had slapped the customer, and refused to consider plaintiff's own statements or those of another witness favorable to her. *Id.* The court held that the officer was not entitled to qualified immunity, based on the plaintiff's allegations. *Id.* at 651. *See Id.* at 434 (quoting *Bagley*, 473 U.S. at 678). The Court specifically noted that a defendant does not have to establish by a preponderance of the evidence that the suppressed evidence would have resulted in an acquittal. *Kyles*, 514 U.S. at 434. The *Kyles* Court further explained that materiality is not a sufficiency of the evidence test, that is, a defendant does not have to show that there was insufficient evidence to convict after discounting the inculpatory evidence in the light of undisclosed exculpatory evidence. *Id.* at 434-35. It is enough to show that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 435. Once a reviewing court has found constitutional error based on the failure to disclose exculpatory evidence, there is no need for further harmless-error review. *Id.* at 435. This follows from the materiality test which itself requires that the evidence be sufficient to undermine confidence in the result of the trial.

68.  Defendant City of New York was on notice of 18Th Precinct Police Officers and other employees malicious attempts to violate Plaintiff's Constitutional Rights in reprisal against the exercise of his First Amendment Rights, notwithstanding material facts described in This complaint that were deceptively concealed from DANY.  *See* Claim #s are respectively, "2015PI007151 [3/12/2015, 4/29/2015, 7/16/2015]" "2016PI006743, 12/28/2015," "2016PI006744 1/20/2016" and "2016PI035992, 12/20/2016 [Notice of this matter]."

69.  According to Penal Law §210.45 the alleged basis for factual charges upon the accusatory instrument(s) that Officer Martinez, allegedly obtained from Joseph Governali "are subject to a Class A Misdemeanor, and as other crimes." Officer Martinez endorsed, false, fraudulent and perjured charges and submitted the accusatory instrument(s) to DANY, without a proper investigation of existing exculpatory material facts that dispute the allegations.  *See* "Brady is violated when the government fails to turn over even evidence that is "known only to police investigators and not to the prosecutor." Youngblood v. West Virginia, 547 U.S. 867 (2006).  *See* "To be facially sufficient, an accusatory instrument "must designate the offense or offenses charged" (CPL § 100.15 [2]) and "must contain a statement of the complainant alleging facts of an evidentiary character supporting or tending to support the charges" (CPL § 100.15 [3]). More specifically, an information must provide "reasonable cause to believe that the defendant committed the offense" and must contain "nonhearsay allegations . . . [that] establish, if true, every element of the offense charged and the defendant's commission thereof" (People v Henderson, 92 NY2d 677, 679 [1999]); See CPL §100.40 [1]).  *See*  "When assessing the facial sufficiency of an accusatory instrument, a court must view the facts in the light favorable to the People. People v. Vonancken, 27 Misc 3d 132(A) (App. Term, 2d Dept 2010); People v. Gonzalez, 184 Misc 2d 262 (App. Term, 1st Dept), lv. denied, 95 NY2d 835 (2000).  However, conclusory allegations are insufficient [see, People v. Dreyden, 15 NY3d 100 (2010)]; People v. Dumas, 68 NY2d 729 (1986); People v. South, 29 Misc 3d 92 (App. Term, 2d Dept 2010)."  *See* "A prosecutor has a duty to learn of favorable evidence known to other prosecution and investigative agencies acting on the prosecution's behalf, including police agencies." Kyles v.Whitley (1995) 514 U.S. 419, 437-438. *See* "There is a duty on the part of the prosecution, even in the absence of a request therefore, to disclose all substantial material evidence favorable to an accused, whether such evidence relates directly to the question of guilt, to matters relevant to punishment, or to the credibility of a material witness." People v. Ruthford (1975) 14 Cal.3rd 399, 406. *See* "The suppression of favorable evidence produces "prejudice" to a defendant only if the suppressed evidence is "material." Evidence is "material" only if "'there is a reasonable probability' that the result of the trial would have been different if the suppressed [evidence] had been disclosed to the defense." Strickler v. Greene, supra. at pp. 289. *See* "The Court of Appeals has stated that CPL § 100.40 (1) places "the burden on the People to make out their prima facie case for the offense charged in the text of the information" (People v Jones, 9 NY3d 259, 261 [2007]). It should be noted that the prima facie case requirement is not the same as the burden required at trial of proof beyond a reasonable doubt, "nor does it rise to the level of legally sufficient evidence that is necessary to survive a motion to dismiss based on the proof presented at the trial" (People v Kalin, 12 NY3d 225, 230 [2009]). Rather, what is required is that the factual allegations in the information "give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense" (Id. at 230 [internal citations and quotations omitted]). Ultimately, the information "should be given a fair and not overly restrictive or technical reading" (People v Casey, 95 NY2d 354, 360 [2000])."  *See* "Only by the filing of an accusatory instrument with a criminal court may a criminal action be commenced (CPL §§1.20[16], 100.05; People v. Farkas, 16 NY3d 190, 193 [2011]). Obviously, a legally or facially insufficient accusatory instrument

cannot be the basis to commence a criminal action. (See People v. Hightower, 18 NY3d 249, 254 [2011] [the failure of an accusatory instrument to allege facts, which provide reasonable cause to believe a defendant committed the offense charged, is a jurisdictional defect, "implicating the integrity of the process," and should be dismissed] [citations omitted])."

70.   Joe Governali/Defendant's deliberately withheld their acts and Plaintiff's video recordings from DANY and fabricated false allegations with reckless disregard for truth. This is an irrefutable material fact that questions the credibility of Joe Governali and Defendants [Martinez]. *See*, "Brady v. Maryland, #490, 373 U.S. 83 (1963)," *See* "Kyles v. Whitley, #93-7927, 514 U.S. 419 (1995)," *See* "Giglio v. United States. 450 U.S. 150 (1972)." *See* "People v. Gray 150 Misc.2d 852 (1991)." *See* United States v. Blanco, 103 #03-10390, 2004 U.S. App. Lexis 26815, 392 F.3d 382 (9th Cir. 2004), "exculpatory evidence cannot be kept out of the hands of the defense just because the prosecutor does not have it, where an investigating agency does. That would undermine Brady by allowing the investigating agency to prevent production by keeping a report out of the prosecutor's hands until the agency decided the prosecutor ought to have it, and by allowing the prosecutor to tell the investigators not to give him certain materials unless he asked for them." *See* "… At most, probable cause may be defeated if the officer "deliberately disregard[s] facts known to him which establish justification." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir.2003) (emphasis added). …the officer may not "deliberately disregard facts known to him which establish" an exculpatory defense. Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003). Indeed, an officer's awareness of the facts supporting an exculpatory defense may eliminate probable cause. Id. at 135. …Panetta v. Crowley, 460 F.3d 388, 398 (2d Cir.2006) ("Once an officer has probable cause, he or she is neither required nor allowed to continue investigating, sifting and weighing information.") (internal quotation marks omitted). At most, probable cause may be defeated if the officer "deliberately disregard[s] facts known to him which establish justification." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir.2003) (emphasis added)."

71.   The Plaintiff carries a camera as a safeguard/for evidentiary purposes and has filmed multiple situations to protect his integrity with evidence against various abuses, hostility, lies and allegations that multiple parties have attempted to illegally entrap, frame and sabotage the Plaintiff in a widespread conspiracy originating from the jewelry industry. Joe Governali and the NYPD are part of that conspiracy. The City of New York, through the NYPD is the initiator and producer of that conspiracy. And the City of New York/NYPD is fully aware that the Plaintiff video records matters of public concern. Joe Governali and Defendants conspired and shared in the production of false information and acquiesced with falsifications from the 47Th Street Manhattan Diamond District.

72.   Defendants failed to review and disregarded the Plaintiff's videos for differential comparison and material truth, thus conducting improper, partial and biased investigation(s) against the Plaintiff's Protected First, Fourth, Fifth and Fourteenth Amendment Substantive and Procedural Due Process Rights.

73.   The Defendants deliberately disregarded the Plaintiff's videos with a reckless disregard for truth, conspiring to influence verdicts against the Plaintiff's Substantive and Procedural Due Process rights, and conspired to interfere with his civil rights.

74.   All allegations and charges upon the DAT and accusatory instrument(s)/information are subject to penalties pursuant to PL "§210.45," by comparison of the video recorded facts obtained by Plaintiff.

75. Plaintiff's videos clearly demonstrate that Governali explosively struck the camera and attacked the Plaintiff. Governali grabbed the Plaintiff into a bear hug with further assaults. The Plaintiff dropped his knees, pulled his body down, under and out of the bearhug, while Governali was still grabbing the Plaintiff from above (the shaking of the camera clearly indicates Governali's continual assault). Plaintiff shouted "stop and call the police," during Governali's attack. Governali and Plaintiff went through the door, into the staircase. Plaintiff punched Governali with his left hand and pushed Governali off of him with his foot. Governali went towards the stairs and down a few steps. Governali grabbed the handrail and Carlos came between Plaintiff and Governali. Governali began heading up the stairs, behind Carlos, towards the Plaintiff and Plaintiff reached around Carlos and extended his foot to keep Governali away. Governali got kicked in the process. Governali headed up the stairs and the Plaintiff ran down the stairs, clear of Governali. Plaintiff noticed that the camera went off and turned it back on. The Plaintiff was justified in defending himself against Governali's unjustified violence. These material video facts are not indicated upon the accusatory instrument(s) to DANY, because Defendants disregarded the videos.  *See*, "Brady v. Maryland, #490, 373 U.S. 83 (1963)," *See* "Kyles v. Whitley, #93-7927, 514 U.S. 419 (1995)," *See* "Giglio v. United States. 450 U.S. 150 (1972)." *See* "People v. Gray 150 Misc.2d 852 (1991)."

76. The Defendants did not view or investigate the entirety of video(s) "a" at any time [note that the videos in the above "a" link are spliced together from the original unredacted files, currently available]. And the videos were/are material evidence that the Officers disregarded [Officer Martinez's allegations upon the alleged accusatory instrument illustrate this comparable fact]. *See* "… At most, probable cause may be defeated if the officer "deliberately disregard[s] facts known to him which establish justification." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir.2003) (emphasis added). …the officer may not "deliberately disregard facts known to him which establish" an exculpatory defense. Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003). Indeed, an officer's awareness of the facts supporting an exculpatory defense may eliminate probable cause. Id. at 135. …Panetta v. Crowley, 460 F.3d 388, 398 (2d Cir.2006) ("Once an officer has probable cause, he or she is neither required nor allowed to continue investigating, sifting and weighing information.") (internal quotation marks omitted). At most, probable cause may be defeated if the officer "deliberately disregard[s] facts known to him which establish justification." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir.2003) (emphasis added)."

77. The videos demonstrate and establish that:

a). Joe Governali initially attacked the Plaintiff, withheld material facts and conspired with perjured information to DANY.

b). the Plaintiff notified the Defendants of Governali's violent attack(s)/assaults.

c). the Plaintiff notified the Defendants of his videos.

d). the Defendants acknowledged the videos.

e). the Defendants intentionally disregarded the videos and fraudulently concealed material facts from DANY with perjured instruments.  *See* "Brady is violated when the government fails to turn over even evidence that is "known only to police investigators and not to the prosecutor." Youngblood v. West Virginia, 547 U.S. 867 (2006). *See* … At most, probable cause may be defeated if the officer "deliberately disregard[s] facts known to him which establish justification." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir.2003) (emphasis added). …the officer may not "deliberately disregard facts known to him which establish" an exculpatory defense. Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003).

f). Defendants intentionally and unconstitutionally arrested the Plaintiff, without any probable cause, consent or formal notice of arrest.

g). Defendants alleged "were gonna have an investigation back at the [18Th] Precinct," and lured the Plaintiff into a prison cell, without cause, without consent and without any investigation of existing material facts. This is an irrefutable fact.

h). Defendants intentionally withheld exculpatory information from the alleged accusatory instrument(s)/DANY.

i). Defendants intentionally failed to conduct full, proper and impartial investigations of material facts.

j). Defendants intentionally forged allegations and charges against the Plaintiff upon a "Desk Appearance Ticket and Accusatory Instrument(s).

k). Defendants conspired to produce and acquiesced with false charges against the Plaintiff.

l). Defendants intentionally compounded false, hearsay and conclusory charges against the Plaintiff.

m). Defendants conspired to interfere with the Plaintiff's Substantive and Procedural Due Process Rights.

n). Defendants deliberately submitted false instruments to DANY with malicious indifference and reckless disregard for truth.

o). Defendants intentionally falsified accusatory instruments against the Plaintiff to obstruct justice.

p). Joe Governali intentionally falsified charges and allegations against the Plaintiff to obstruct justice.

q). Joe Governali and Defendants conspired and omitted material facts for the purpose of engaging in all the above conduct against the Plaintiff and omitted material facts and other relevant information from DANY. *See* "Brady is violated when the government fails to turn over even evidence that is "known only to police investigators and not to the prosecutor." Youngblood v. West Virginia, 547 U.S. 867 (2006). *See*, "Brady v. Maryland, #490, 373 U.S. 83 (1963)," *See* "Kyles v. Whitley, #93-7927, 514 U.S. 419 (1995)," *See* "Giglio v. United States. 450 U.S. 150 (1972)." *See* "People v. Gray 150 Misc.2d 852 (1991)." *See* United States v. Blanco, 103 #03-10390, 2004 U.S. App. Lexis 26815, 392 F.3d 382 (9th Cir. 2004), "exculpatory evidence cannot be kept out of the hands of the defense just because the prosecutor does not have it, where an investigating agency does. That would undermine Brady by allowing the investigating agency to prevent production by keeping a report out of the prosecutor's hands until the agency decided the prosecutor ought to have it, and by allowing the prosecutor to tell the investigators not to give him certain materials unless he asked for them." *See* ... At most, probable cause may be defeated if the officer "deliberately disregard[s] facts known to him which establish justification." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir.2003) (emphasis added). ...the officer may not "deliberately disregard facts known to him which establish" an exculpatory defense. Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003). Indeed, an officer's awareness of the facts supporting an exculpatory defense may eliminate probable cause. Id. at 135. ...Panetta v. Crowley, 460 F.3d 388, 398 (2d Cir.2006) ("Once an officer has probable cause, he or she is neither required nor allowed to continue investigating, sifting and weighing information.") (internal quotation marks omitted).

78. Video "a," demonstrates gross contradictions upon the accusatory instrument.

79. Video "a" renders the accusatory instrument allegations as perjured, fraudulent and nonexistent fictions.

80. Video "a" displays a sequence of events contradicting descriptions on the accusatory instrument.

81. Video "a" exposes perjured allegations and fraudulent submissions upon the accusatory instrument.

82. Video "a" exposes the accusatory instrument's fraudulent and counterfeit nature.

83. The accusatory instrument exhibits a reckless disregard for material facts.

84. The accusatory instrument exhibits a reckless disregard for exculpatory information.

85. Governali's recorded statements and physical attacks against the Plaintiff are omitted from the accusatory instrument.

86. The Plaintiff's video is omitted from the accusatory instrument.

87. Video "a," demonstrates that Joe Governali violently confronted the Plaintiff and concurrently attempted to destroy the video camera to tamper with evidence.

88. Video "a" demonstrates that Plaintiff was yelling "stop" and "call the police," while Governali was attacking the Plaintiff.

89. Video "a" demonstrates that Plaintiff was holding a video camera in his right hand while Governali was open handedly attacking the Plaintiff.

90. Video "a" demonstrates the Plaintiff continued to hold the camera, while Governali was attacking Plaintiff.

91. Video "a" demonstrates Governali attacked Plaintiff with both hands and his heavy body weight.

92. Video "a" demonstrates Governali knew that the Plaintiff was filming and obtained video of his attack.

93. Video "a" demonstrates Governali violently attacked and repeatedly attempted to attack the Plaintiff.

94. Video "a" demonstrates Governali physically attacked the Plaintiff in malicious retaliation for filming him.

95. Video "a" demonstrates Governali attacked Plaintiff with brute force and attempted to strike video camera to destroy and tamper with evidence.

96. Video "a" demonstrates Joe Governali intentionally presented a direct threat to the Plaintiff's safety and well being.

97. Video "b" and the accusatory instrument demonstrates the Defendants acknowledged and disregarded Plaintiff's videos from any investigations.

98. Video "b" and the accusatory instrument demonstrates the Defendants unconstitutionally arrested and imprisoned the Plaintiff without notice, consent or determination of probable cause.

99. Videos "a" and "b" and the accusatory instrument demonstrates that Governali and Defendants disregarded and acquiesced to omit and withhold material facts from DANY in collusion.

100. Videos "a" and "b" as compared with the alleged accusatory instrument demonstrates that the Defendants did not investigate material facts and intentionally perjured allegations to DANY with malicious indifference and reckless disregard for truth.

101. Videos "a" and "b" establish and demonstrate Joe Governali is a false witness.

102. Videos "a" and "b" establish that Defendants conspired with a false witness.

103. Videos "a" and "b" establish that Defendants presented a false witness to DANY.

104. Videos "a" and "b" establish that Defendants disregarded material evidence and facts.

105. Videos "a" and "b" establish that Defendants did not conduct an investigation of material facts.

106. Videos "a" and "b" establish that the accusatory instrument invidiously prejudices the Plaintiff.

107. Videos "a" and "b" render the accusatory instrument as a fake and counterfeit fraud, without any veracity.

## THE REASON PLAINTIFF WENT TO 36 WEST 47TH STREET AND WHAT TRANSPIRED

108. On December 15, 2016 "Carlos," was accompanied with "Dino" in the Plaza Arcade passageway, (located at 27 West 47Th Street, New York). Carlos informed the Plaintiff that he was seeking his assistance to move Diamond Cutting tables, but didn't arranged the moving job, yet. Carlos asked for Plaintiff's phone number to place on his new cell phone. The Plaintiff has previously assisted Carlos to move very heavy diamond cutting tables in the Diamond District.

109. On December 16, 2016 Plaintiff went to the 36 West 47Th St. building to inquire if Carlos arranged the job. Plaintiff overheard Carlos' in the staircase on the 15Th floor and proceeded there to ask about the move. Carlos was speaking with Dino in the staircase and didn't answer the Plaintiff.

110. The Plaintiff noticed "Jimmy" standing in the hallway, just outside of room #1508, about 20 feet from the staircase, and began "small talk" with Jimmy (Jimmy is a long time acquaintance of the Plaintiff, since 1993).

## THE REASON PLAINTIFF VIDEO RECORDED

111. *See* " *a party to a criminal conversation that recorded the conversation in order to bring evidence to the police or recording "out of a legitimate desire to protect himself and his own conversations from later distortions or other unlawful or injurious uses by the other party would be protected under the statute. Id. "* CARO v. WEINTRAUB LLP United States Court of Appeals, Second Circuit, Docket No. 09-3685-cv, August 13, 2010" at http://caselaw.findlaw.com/us-2nd-circuit/1534978.html

112. As the Plaintiff was speaking to Jimmy, Joe Governali opened the office door from inside, peered out and said to Jimmy, "you're the only person allowed in here; he's [the Defendant's] not."

113. The Plaintiff then began recording (to record Governali's responses) and rang the office-doorbell to question Governali's discriminating statements to Jimmy. The door lock buzzed open in response.

114. The door [opening] buzzer can be heard in the video. [According to information and belief, Jeffery Dubester buzzed the door open from the inside, as he recognized the Plaintiff on the monitor in his office. Jeffery informed Plaintiff of this after the Plaintiff was released from the 18Th Precinct. Jeffery did not know what happened with Governali. The Plaintiff went to explain the matter to Jeffery with video on his camera. Jeffery is the individual who came out of the office hollering and screaming in the video. Jeffery did not know what transpired as he was at his diamond cutting station the entire time. And Governali intentionally remained reticent, knowing what he did].

115. In the beginning of video "a " Plaintiff asked Governali why he said that to Jimmy. Governali responded, "but, who invited you here?"

116. Plaintiff asked, "is this your office for you to say something like that?" Governali arose from his seat, walked over to the Plaintiff and shoved Plaintiff out of the door with his hands. Plaintiff slapped Governali's face in the process. Governali also attempted to strike the camera. Plaintiff then walked into the staircase and began speaking with Carlos, Dino and Jimmy. Governali came out of the office, stalked the Plaintiff into the staircase, and attempted to influence and

mislead Carlos, Dino and Jimmy with false information and full of omissions. Plaintiff had his coffee cup in his left hand and video camera in his right hand (also note that Governali removed his sport jacket that he was wearing in the office). Governali moved closer to the Plaintiff's left side and placed his right arm behind the Plaintiff's back, again with physical contact. Plaintiff said, "get off" and alerted the others, "do you see what he's doing, do you see what he's doing?" Governali then walked out of the staircase, into the hallway, towards the office. Plaintiff asked Governali, "do you want to try that again?" "do you want to try that again?" Governali then turned about, walked towards the Plaintiff and attacked the Plaintiff with brute force. Plaintiff was holding a coffee cup in his left hand and video camera in his right hand (see Crucial Forensic Detail…, below). Governali continued his attack into the staircase and Plaintiff used physical force to defend himself against Governali's attack. The video demonstrates this fact.

### CRUCIAL FORENSIC DETAIL (THAT PROVES GOVERNALI ATTACKED THE PLAINTIFF)

117. When Governali walked out of the staircase and turned around the Plaintiff was holding the camera in his right hand at arm's length [extended laterally to the right]. This fact is visibly clear in the video for the reason that Governali did not walk directly into the camera lens. Governali can be seen walking toward the left, perpendicular to the lens at the right Governali directly approached the Plaintiff's torso to the left of the camera.

118. The camera was extended to the right and the Plaintiff's torso was to the left of his extended right arm. It is for this reason that Governali does not walk into the camera lens. Governali walked directly towards the Plaintiff's torso at the left of the extended camera and attacked the Plaintiff. The video demonstrates this fact with forensic accuracy that cannot be refuted.

### PLAINTIFF'S SELF DEFENSE

119. Plaintiff's self defense was necessary and justified in accordance with and pursuant to Penal Law §35.05 (2) and Penal Law §35.15 (1) below:

"§ 35.05 (2) JUSTIFICATION; GENERALLY

Unless otherwise limited by the ensuing provisions of this article defining justifiable use of physical force, conduct which would otherwise constitute an offense is justifiable and not criminal when:

(2). Such conduct is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue. The necessity and justifiability of such conduct may not rest upon considerations pertaining only to the morality and advisability of the statute, either in its general application or with respect to its application to a particular class of cases arising thereunder. Whenever evidence relating to the defense of justification under this subdivision is offered by the Plaintiff, the court shall rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a defense. And:

§ 35.15 (1) JUSTIFICATION; USE OF PHYSICAL FORCE IN DEFENSE OF A PERSON

(1). A person may, subject to the provisions of subdivision two, use physical force upon another person when and to the extent he or she reasonably believes such to be necessary to defend himself, herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful physical force by such other person,"

120. The officers intentionally disregarded to review the Plaintiff's videos for exculpatory evidence and material facts. _See_ "… At most, probable cause may be defeated if the officer "deliberately disregard[s] facts known to him which establish justification." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir.2003) (emphasis added). …the officer may not "deliberately disregard facts known to him which establish" an exculpatory defense. Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003). Indeed, an officer's awareness of the facts supporting an exculpatory defense may eliminate probable cause. Id. at 135. …Panetta v. Crowley, 460 F.3d 388, 398 (2d Cir.2006) ("Once an officer has probable cause, he or she is neither required nor allowed to continue investigating, sifting and weighing information.") (internal quotation marks omitted)."

121. Joe Governali/Officer Martinez deliberately falsified statements and intentionally withheld material facts, remained reticent and conspired with Other Police officers to falsify reports to DANY. _See_, "Brady v. Maryland, #490, 373 U.S. 83 (1963)," _See_ "Kyles v. Whitley, #93-7927, 514 U.S. 419 (1995)," _See_ "Giglio v. United States. 450 U.S. 150 (1972)." _See_ "People v. Gray 150 Misc.2d 852 (1991)."

122. Defendants falsified malicious charges against the Plaintiff and submitted false instruments to influence malicious verdicts against the Plaintiff, without any probable cause or investigative finding. Material video facts are omitted from disclosure to DANY. And the omissions demonstrate that Governali/Police deliberately withheld material information from DANY. _See_ "Brady is violated when the government fails to turn over even evidence that is "known only to police investigators and not to the prosecutor." Youngblood v. West Virginia, 547 U.S. 867 (2006).

123. Joe Governali is/was the violent aggressor by his own volition and can clearly be observed confronting the Plaintiff with intentional physical force and an explosive violent attack that the Plaintiff filmed, notwithstanding the omissions upon the alleged accusatory instrument(s). Defendants are aware of Plaintiff's video recording and fraudulently concealed it from the court's attention to gain collateral objective outside of the legitimate ends of the legal process.

124. Plaintiff acted in self defense against Governali's violent attack. Governali presented a risk to his own personal safety and knew or should have known that the Plaintiff has the right to justified self defense and necessitated right to self defense. In addition Governali also presented the possibility of injuring others present. There is no doubt that Governali sustained an injury on account of his own recklessness that he subjected upon himself. The Plaintiff was justified in defending himself. Governali recklessly endangered the Plaintiff's safety, his own safety and the safety of others.

125. These material video facts are not indicated upon the accusatory instrument(s) to DANY. There is no doubt to this. _See_, "Brady v. Maryland, #490, 373 U.S. 83 (1963)," _See_ "Kyles v. Whitley, #93-7927, 514 U.S. 419 (1995)," _See_ "Giglio v. United States. 450 U.S. 150 (1972)." _See_ "People v. Gray 150 Misc.2d 852 (1991)."

126. What is even more clear is that Governali walked away a second time with blood on his face and then returned to strike the Plaintiff again, as can be seen on video. The Plaintiff's video demonstrates this without a doubt.

127. Joe Governali is a false police witness and is recklessly being used by the NYPD to frame the Plaintiff, notwithstanding existing exculpatory information that the NYPD deliberately disregarded.

PLAINTIFF'S RELATIONS WITH OCCUPANTS OF 36W 47TH STREET, SUITE 1508

128. The building of 36 West 47Th Street, NY, NY is a public access building.  The Plaintiff knows "Jeffery Dubester" who's name can be seen on the door of the videos, and has also assisted Mr. Dubester with minor renovations to his office, attempts to adjust his diamond scale(s) and installing a vent duct, with promises of additional renovations to Jeffery's office. The Plaintiff also knows "Carlos," who has hired the Plaintiff to move Diamond Cutting Tables with him and Carlos has called the Plaintiff on several occasions for assistance, moving the heavy equipment.

129. On December 16, 2016 Carlos was the reason that Plaintiff went to 36 West 47Th Street to inquire about a moving job that Carlos notified the Plaintiff about on Thursday 12/15/16 in the Plaza Arcade passageway, located at 27 West 47Th Street, New York, New York and between 47Th and 48Th Streets and 5Th and 6Th Avenues.

130. The Plaintiff's relations with others in the 36 West 47Th Street, suite # 1508 office will verify that he has additional work prospects with others there and is also known by building maintenance employees, such as "Bosco." Jeffery Dubester owns room 1508. Plaintiff knows Mr. Dubester with pleasant relations. Plaintiff had multiple reasons of pending work interests to follow up on to be there, aside from Carlos. For example, Plaintiff also knows Ed Fried and moved Ed Fried's safe from 64 west 48Th Street, room # 507 to 1508, 36 West 47Th Street over the 2016 summer, Carlos and Dino were also present then and witness to this fact. The Plaintiff met Jeffery Dubester on the day that he moved Ed Fried's safe into room1508 in the 2016 summer. After helping Ed Fried transport his safe to the office, Ed fried dropped it off the dolly on the floor, and the impact vibration damaged Jeffery Dubester's Diamond Scale.

131. After situating Fried's safe the Plaintiff assisted Mr. Dubester to calibrate and fix his Diamond Scale for a few hours. Because the balance sensor was damaged Mr. Dubester then hired the famous old man from 20 West 47Th Street to repair the electro-mechanical part. Jeffery had another scale and the Plaintiff adjusted it as a replacement, until the inoperative scale was restored. Jefferey also asked the Plaintiff if he can do some landscaping work in his home backyard and also paint his house and possibly the 1508 office, when he's ready [these are currently pending work interests]. The Plaintiff also installed a round vent duct through the window, above the water dispenser in Jeffery's office. In addition, Carlos has sent the Plaintiff into the office to get tools for him for moving Diamond Cutting benches; and Carlos' tools are in the drawers under the coffee machine to the immediate left of the entrance in room 1508. Carlos has also sent the Plaintiff to transport heavy steel Diamond Cutting "Wheels" from the office, behind the water dispenser. There has been several occasions when Jeffery Dubester also gave the Plaintiff scrap metals to sell, such as Aluminum and Copper, including his old "Dops." A "Dop" is a clamp to secure a diamond against a Diamond Cutting/Polishing Wheel. These are irrefutable facts.

DEFENDANT MARTINEZ AND P.O. "LOSO" ARE AWARE OF THE FOLLOWING FACTS:

132. Plaintiff recorded Police Officer Martinez on March 31, 2016 and placed the video on YouTube. *See* https://www.youtube.com/watch?v=VMUPxSbdwY0 [in this video fabricated statements and allegations are being supplied by various individuals that are discriminating against the Plaintiff's protected civil rights. On March 31, 2016 Officer Loso, Shield # 10587 confirmed that the Plaintiff was permitted to enter the 62 west 47Th Street, NY, NY building, while Officer Martinez, landed conclusory allegations of Plaintiff attempting to scare him with a camera and taking his badge number, notwithstanding that officer Loso confirmed Plaintiff's pending business interest. *See* Glik v. Cunniffe,

655 F.3d 78 (1st Cir. 2011) "A private citizen has the right to record video and audio of public officials in a public place ... " The Plaintiff's soccer ball was being used as a decoy/diversion to conceal the covert activities of the City of New York's cooperating third parties interference with the Plaintiff's interests. The City of New York is conspiring and influencing third parties in a planned, premeditated and conspired set of illegal activities and falsehoods, intended to illegally entrap, discredit and defame the Plaintiff's character, discredit his expertise in the Jewelry industry and interfere with his protected civil rights, inter alia.

133. On 12/16/15, exactly one year prior to this matter, Plaintiff recorded false allegations of the black building security person that incited a conspired confrontation with the Plaintiff that also included the building Superintendant, "Gene." The matter clearly established that the 62 west 47Th Street employees engaged in planned, premeditated and conspired retaliatory activities against the Plaintiff for filming facts and publishing them on YouTube. The 12/16/15 video link is https://www.youtube.com/watch?v=dsnk2GDu9dQ The black security guard's allegations made it clear that he was lying and could not have observed the allegations that he complained of. The black security guard alleged that the Plaintiff was playing with the soccer ball in the lobby, as the Plaintiff placed the ball in the corner of the security desk and simply tied his shoelace. The Security guard began yelling, hollering and harassing the Plaintiff and Plaintiff began video recording the security guard. The Plaintiff notified the FBI and Senator Tony Avella of the matter, with video footage. It should also be known that the Building also has cameras that would corroborate the above facts. The Building Superintendent, "Gene" voluntarily involved himself into the matter and demonstrated a continuous pattern of malicious hostility against the Plaintiff, without reviewing existing facts recorded by building surveillance cameras. Gene voiced threats against the Plaintiff, used malicious accusations and threatened additional defamatory activities against the Plaintiff, not withstanding that "Gene," admitted and clearly stated, "I know you didn't do anything."

134. On March 31, 2016, the black security guard, Gene, Nathan and Israel invidiously retaliated against the Plaintiff for placing the 12/16/15 video on YouTube, notwithstanding that Nathan did in fact require the services of Plaintiff on 12/16/15, by his own admission, and then attempted to align with Gene's reckless disregard for the facts that they both obfuscated, and retaliated against the Plaintiff.  On March 31, 2016 Officer Martinez failed to investigate into existing facts, not withstanding that Officer Loso verified the Plaintiff's reports, upon his investigation.  And on March 31, 2016 Gene clearly admitted that "he would do it ("tortuosly interfere") again and it's gonna happen again" – Gene voluntarily admitted this by his own volition.  It should also be clear that on March 31, 2016 Officer Martinez clearly stated that he was going to review the Plaintiff's video of 12/16/15, inter alia.

135. The City of New York, NYPD, The FBI and 18Th Precinct Officers (Martinez) are aware of Plaintiff's YouTube videos of 18Th Precinct officers. Officer Martinez can be heard stating that he would look into the YouTube videos on March 31, above.

## PROCEEDINGS TO DATE IN ALLEGED CRIMINAL COURT DOCKET "2016NY073858"

136.  In the alleged criminal matter at Manhattan Criminal Court the Plaintiff first appeared on December 29, 2016, earlier than the first appearance date, February 6, 2017.

137. On December 29, 2016 the Court (Hon. Judge Guarino) served the Plaintiff an Order of Protection, and adjourned to February 14, 2017, Part B.

138. On February 14, 2017 Plaintiff appeared before Hon. Judge Hanshaft.

139. Judge Hanshaft inquired of any "offers" from the prosecutor.

140. The Prosecutor replied "NYPL 140.10 – Charge of Trespass."

141. The Plaintiff replied, "it's fraud and the building is public access," to a representing public defender, Alexzandria Poole."

142. Judge Hanshaft over heard the Plaintiff and stated' "No, we don't have enough yet!" to the prosecutor.

143. Judge Hanshaft then scheduled "Motion Schedule," and adjourned to March 27, 2017.

144. Defendant filed his Omnibus Motion to Dismiss promptly on February 21, 2017.   See below.

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK<br><br>-against - | DEFENDANT'S OMNIBUS<br>MOTION TO DISMISS<br><br>MISDEMEANOR<br>DOCKET No: 2016NY073858 |
| RAFFI STEPANIAN (M48),<br>Defendant | |

### DEFENDANT'S OMNIBUS MOTION TO DISMISS

I. DEFENDANT'S OMNIBUS MOTION TO DISMISS PURSUANT TO C.P.L.s "§35.05(2)," "§35.15 (1),"
"§170.30(a)," "§170.35 1(a)(c)," "§210.45 1, 4(a),(b), (c)," "§210.25 (2),(3)," "§100.15," "§100.40, §170.40(e)"
and "CPL § 530.13."

II. BILL OF PARTICULARS

III. MOTION AND DEMAND FOR DISCOVERY PURSUANT TO C.P.L. §240.40(l)(c)

IV. MOTION TO SUPPRESS ALL EVIDENCE OBTAINED FROM THE UNLAWFUL ARREST OF THE
DEFENDANT PURSUANT TO C.P.L. §710.20

V. MOTION TO SUPPRESS EVIDENCE OF STATEMENTS PURSUANT TO C.P.L. §710.20(3)

VI. RESERVATION OF DEFENDANT'S RIGHTS TO SUPPLEMENT OR MAKE FURTHER MOTIONS





145. Public Defender, Alexzandria Poole, filed her own Omnibus Motion on March 10, 2017.

146. On March 27, 2017 Plaintiff appeared before Hon. Judge Cesare.

147. While waiting for the calendar call a different Public Defender provided the Plaintiff with an alleged "affidavit in response to Defendant's Omnibus Motion, Drafted by ADA "Jonathan Horn."

148. The Plaintiff requested of Judge Cesare where the response to his Omnibus Motion was.

149. Judge Cesare permitted the Plaintiff to represent himself as his own counsel as the Plaintiff raised a grievance about Alexzandria Poole, who failed to appear in representation of Plaintiff.

150. The Prosecutor offered a plea deal of NYPL, "240.30, Harassment 2nd Degree" and a Five year protection Order for Joe Governali.

151. The Plaintiff declined from accepting any plea bargains and stated that he is not a criminal.  Judge Cesare granted a "Dunnaway Hearing and Trial, adjourned to May 15, 2017.

152. On March 30, 2017 Plaintiff obtained Mr. Jeffrey Dubester's Affidavit In Support of Defendant.

## AFFIDAVIT OF "JEFFREY DUBESTER" IN SUPPORT OF PLAINTIFF

153. The Plaintiff has obtained Mr. Jeffrey Dubester's Affidavit In Support of the Plaintiff's "welcome" presence in his office, located at 36 West 47Th Street, New York, New York, 10036, Suite 1508 as exhibited in the following two pages with an original document included with this response to the "City's Motion To Stay." See Jeffrey Dubester's Affidavit In Support of Defendant/Plaintiff in the following two pages, below.

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK<br><br>-against -<br><br>RAFFI STEPANIAN (M48),<br><br>Defendant | DEFENDANT'S SUPPORTING<br>AFFIDAVIT IN OPPOSITION<br>TO THE PEOPLE OF THE<br>STATE OF NEW YORK<br><br>MISDEMEANOR<br>DOCKET No: 2016NY073858 |

## DEFENDANT'S AFFIDAVIT IN OPPOSITION TO THE PEOPLE OF THE STATE OF NEW YORK

### AFFIDAVIT OF JEFFREY DUBESTER IN SUPPORT OF DEFENDANT

1.  I am Jeffrey Dubester, affiant and sole owner and proprietor of "Dubester Diamond Cutters," office located at 36 West 47Th Street New York, New York, 10036, Suite 1508.

2.  I, Jeffrey Dubester, acknowledge and affirm to welcoming and allowing Raffi Stepanian's legal entry into my office without any conflict, before and/or on December 16, 2016 with my word being the only decision on who can and cannot enter my office.

3.  I, Jeffrey Dubester, acknowledge and affirm to permitting Raffi Stepanian's legal entry into my office after he was released from the 18Th Precinct on December 16, 2016.

4.  I, Jeffrey Dubester, acknowledge and affirm to having shared pleasant relations with Raffi Stepanian and Raffi Stepanian did not illegally trespass into my office in any way shape or form at any time.

5.  I, Jeffrey Dubester, acknowledge and affirm that Raffi Stepanian has not, did not and never illegally trespassed or engaged in any illegal trespass into or any area of my office.

6.  I, Jeffrey Dubester, acknowledge and affirm that Raffi Stepanian did in good faith assist Mr. Ed Fried to move his safe into my office.

7.  I, Jeffrey Dubester, acknowledge and affirm that Raffi Stepanian did in good faith assist me to repair my Diamond Scale and adjust the balance of a replacement Diamond Scale.

8.  I, Jeffrey Dubester, acknowledge and affirm that Raffi Stepanian did in good faith offer and to my satisfaction install a ventilation duct in my office by his own voluntary efforts.

9.  I, Jeffrey Dubester, acknowledge and affirm that I was pleased with Raffi Stepanian's rendered service to install a ventilation duct and offered Raffi Stepanian possible future work, such as painting and restorative renovations to my office with considerations of possible landscaping and garden work at my home.

10. I Jeffrey Dubester, acknowledge and affirm that Raffi Stepanian was in good standing and relation with me at all times.

11. And I Jeffrey Dubester, acknowledge and affirm that I permitted Raffi Stepanian to enter my office without any objection and without complaint against or about his presence in my office.

12. I, Jeffrey Dubester, acknowledge and affirm that I am the sole owner of Suite 1508, 36 west 47Th Street, New York, New York, 10036 and I acknowledge and affirm that Raffi Stepanian never illegally trespassed into my office and that I have final authority and control in deciding, who is and who is not permitted entry into my office.

Raffi Stepanian
15-01 144Th Street
Whitestone, New York
11357
Tel: (718) 747-1030

RESPECTFULLY SUBMITTED,

_____,

Dated:_____/2017

I, Raffi Stepanian, affiant, swear under penalties of perjury that the aforementioned is true to the best of my knowledge.

Raffi Stepanian: _____

I, Jeffrey Dubester, affiant, owner and proprietor of Dubester Diamond Cutters, located at 36 West 47Th Street, New York, New York, 10036.  I swear under the penalties of perjury that the aforementioned is true and correct to the best of my knowledge.

Jeffrey Dubester: _____

SS: STATE OF N.Y.
CITY OF N.Y. SUBSCRIBED AND SWORN TO BEFORE ME THIS DAY OF: March 30 /2017

_____
NOTARY

Shirley Jules
Notary Public, State of New York
No. 01JU6079416
Qualified in Kings County
Commission Expires_____201_

2

JEFFREY DUBESTER'S AFFIDAVIT CORROBORATES PLAINTIFF'S INNOCENCE

154. On December 16, 2016, Joe Governali, physically forced the plaintiff out of Jeffrey Dubester's Office, based upon his own personal hatred against the Plaintiff and clearly falsified and voluntarily and knowingly acquiesced with Defendants' knowing and deliberate falsifications to DANY.

155. Joe Governali and Defendants are not justified in falsifying statements or any allegations to DANY.

156. Thus, Mr. Dubester's Affidavit Proves that Joe Governali and Defendants deliberately violated the Plaintiff's Constitutional rights and did not conduct any investigations of existing facts.

157. It should also be known that Joe Governali can be heard alleging, "you have no right to be in there [Jeffrey Dubester's office]" on December 16, 2016.

158. The Plaintiff's entry into Jeffrey Dubester's office was permitted and welcomed by Jeffrey Dubester.

159. The Affidavit Proves that the Defendant's did not inquire/investigate who the owner was and deliberately used false statements and charges dated eleven days later, 12/27/2016, and submitted them to DANY to Prosecute the Plaintiff with false charges.

160. Joe Governali's video recorded statements and acts proves that Joe Governali admitted and attempted to rationalize his violent aggression against the Defendant by using Jeffrey Dubester's office as an excuse for his malfeasance against the Plaintiff.

161. The Affidavit also Proves that the Defendants acquiesced with Governali, without investigating his motives, veracity or any portion of Plainitff's differential videos to deduce truth.

162. The Defendant's criminal acts subjected the Plaintiff to needless criminal court process and violated Plaintiff's protected constitutional rights, with false charges that both Joe Governali and Defendants acquiesced with producing, without any investigations.

163. The Affidavit also Proves that Jeffrey Dubester provided his affidavit in support of the Plaintiff on account of the fact that Plaintiff is in good standing with Mr. Dubester and never violated his trust, regardless of Joe Governali's or Defendant's maliciously perjured allegations.

THE PLAINTIFF IS INNOCENT

164. Therefore Joe Governali and Defendants are deliberately indifferent against the Plaintiff's rights.

165. Defendants maliciously, unconstitutionally, intentionally, with deliberate indifference, falsified charges/instruments and allegations, in retaliation against of Plaintiff's videos, Protected by the First Amendment, on the DAT and accusatory instrument(s) resulting in Criminal Court Docket # "2016NY073858," without conducting any investigation and disregarding material facts.

166. Defendant Martinez's allegations, upon the accusatory instrument(s), Docket # "2016NY073858," are malicious and unconstitutional reprisals and retaliations against the Plaintiff's Protected First Amendment, Substantive and Procedural

Due Process Rights and his Fourth, Fifth and Fourteenth Amendment Constitutional Right(s) and Article I, Section 12 of the New York Constitution.

167. This complaint demonstrates that on 12/16/16 Defendants knowingly disregarded material facts and video evidence and omitted existing exculpatory evidence and forged counterfeit accusatory instruments to DANY.

168. The Plaintiff obtained irrefutable documentary-video evidence from the time of incident(s) that renders allegations (a)-(e) as hearsay, defective, invalid, unconstitutional, facially insufficient, unjust, malicious and prejudicial in their entirety. *See* "To be facially sufficient, an accusatory instrument "must designate the offense or offenses charged" (CPL § 100.15 [2]) and "must contain a statement of the complainant alleging facts of an evidentiary character supporting or tending to support the charges" (CPL § 100.15 [3]). More specifically, an information must provide "reasonable cause to believe that the defendant committed the offense" and must contain "nonhearsay allegations . . . [that] establish, if true, every element of the offense charged and the defendant's commission thereof" (People v Henderson, 92 NY2d 677, 679 [1999]); See CPL § 100.40 [1]). *See* "When assessing the facial sufficiency of an accusatory instrument, a court must view the facts in the light favorable to the People. People v. Vonancken, 27 Misc 3d 132(A) (App. Term, 2d Dept 2010); People v. Gonzalez, 184 Misc 2d 262 (App. Term, 1st Dept), lv. denied, 95 NY2d 835 (2000). However, conclusory allegations are insufficient [see, People v. Dreyden, 15 NY3d 100 (2010)]; People v. Dumas, 68 NY2d 729 (1986); People v. South, 29 Misc 3d 92 (App. Term, 2d Dept 2010)." *See* "The Court of Appeals has stated that CPL § 100.40 (1) places "the burden on the People to make out their prima facie case for the offense charged in the text of the information" (People v Jones, 9 NY3d 259, 261 [2007]). It should be noted that the prima facie case requirement is not the same as the burden required at trial of proof beyond a reasonable doubt, "nor does it rise to the level of legally sufficient evidence that is necessary to survive a motion to dismiss based on the proof presented at the trial" (People v Kalin, 12 NY3d 225, 230 [2009]). Rather, what is required is that the factual allegations in the information "give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense" (Id. at 230 [internal citations and quotations omitted]). Ultimately, the information "should be given a fair and not overly restrictive or technical reading" (People v Casey, 95 NY2d 354, 360 [2000])." *See* "The factual portion of a misdemeanor information charging multiple counts shall "consist of a single factual account applicable to all the counts of the accusatory part" and "[t]he factual allegations may be based either upon personal knowledge of the complainant or upon information and belief . . . [and] in order for an information or a count thereof to be sufficient on its face, every element of the offense charged and the defendant's commission thereof must be supported by non-hearsay allegations of such information and/or any supporting depositions" (CPL 100.15 [3]). "A misdemeanor complaint or a felony complaint, or a count thereof, is sufficient on its face when . . . "[i]t substantially conforms to the requirements prescribed in section 100.15; and People v. Hightower, 18 NY3d 249, 254 [2011]{**18 NY3d at 254} "[t]he allegations of the factual part of such accusatory instrument and/or any supporting depositions which may accompany it, provide reasonable cause to believe that the defendant committed the offense charged in the accusatory part of such instrument" (CPL 100.40 [4] [a], [b]). *See* "Only by the filing of an accusatory instrument with a criminal court may a criminal action be commenced (CPL §§ 1.20[16], 100.05; People v. Farkas, 16 NY3d 190, 193 [2011]). Obviously, a legally or facially insufficient accusatory instrument cannot be the basis to commence a criminal action. (See People v. Hightower, 18 NY3d 249, 254 [2011] [the failure of an accusatory instrument to allege facts, which provide reasonable cause to believe a defendant

committed the offense charged, is a jurisdictional defect, "implicating the integrity of the process," and should be dismissed] [citations omitted])."

169. This complaint demonstrates and establishes that Joe Governali is the intentional violent aggressor against the Plaintiff and colluded with Police officers to falsify accusatory instruments upon this court at all times.

170. This complaint demonstrates and establishes that Defendants colluded with Joe Governali and participated in falsifying accusatory instruments to DANY, notwithstanding the Officers deliberate disregard of material exculpatory facts, to forge all charges, demonstrated by Plaintiff's video recordings.

171. This complaint demonstrates and establishes that the Plaintiff did not engage in any criminal conduct and Defendants acknowledged Plaintiff's videos and excluded them from investigations, and omitted disclosure to DANY. *See* "Brady is violated when the government fails to turn over even evidence that is "known only to police investigators and not to the prosecutor." Youngblood v. West Virginia, 547 U.S. 867 (2006). *See* "The suppression of favorable evidence produces "prejudice" to a defendant only if the suppressed evidence is "material." Evidence is "material" only if "'there is a reasonable probability' that the result of the trial would have been different if the suppressed [evidence] had been disclosed to the defense." Strickler v. Greene, supra. at pp. 289.

172. This complaint demonstrates and establishes that the arresting officers did not observe the Plaintiff commit a crime, nor did they have any reasonably trustworthy information to conclude that the Plaintiff committed a crime. The arrest was thus without probable cause or consent and in violation of the Plaintiff's First, Fourth, Fifth and Fourteenth Amendment Constitutional Rights and the New York Constitution, Article I, Section 12.

173. This complaint demonstrates and establishes that Defendants conspired to produce malicious charges against the Plaintiff, without investigating existing material facts that exculpate the Plaintiff of any probable cause. *See* ... At most, probable cause may be defeated if the officer "deliberately disregard[s] facts known to him which establish justification." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir.2003) (emphasis added). ...the officer may not "deliberately disregard facts known to him which establish" an exculpatory defense. Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003). Indeed, an officer's awareness of the facts supporting an exculpatory defense may eliminate probable cause. Id. at 135. ...Panetta v. Crowley, 460 F.3d 388, 398 (2d Cir.2006) ("Once an officer has probable cause, he or she is neither required nor allowed to continue investigating, sifting and weighing information.") (internal quotation marks omitted). At most, probable cause may be defeated if the officer "deliberately disregard[s] facts known to him which establish justification." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir.2003) (emphasis added).

174. This complaint demonstrates and establishes that Joe Governali and Defendants were/are aware of Plaintiff's video footage and fraudulently concealed disclosure of the videos and/or any factual information from DANY. *See* "Brady is violated when the government fails to turn over even evidence that is "known only to police investigators and not to the prosecutor." Youngblood v. West Virginia, 547 U.S. 867 (2006).

175. This complaint demonstrates and establishes that Joe Governali and Defendants conspired to present false, counterfeit and fraudulent instruments to influence retaliatory and malicious verdicts against the Plaintiff. *See* "Brady is violated when the government fails to turn over even evidence that is "known only to police investigators and not to the prosecutor." Youngblood v. West Virginia, 547 U.S. 867 (2006).

176. This complaint demonstrates that Plaintiff informed the Defendants of material video footage and the Defendants acknowledged the videos and concurrently disregarded to conduct any investigations of material video facts. *See* Glik v. Cunniffe, 655 F.3d 78 (1st Cir. 2011) "A private citizen has the right to record video and audio of public officials in a public place ... " *See* "Brady is violated when the government fails to turn over even evidence that is "known only to police investigators and not to the prosecutor." Youngblood v. West Virginia, 547 U.S. 867 (2006). *See*, "Brady v. Maryland, #490, 373 U.S. 83 (1963)," *See* "Kyles v. Whitley, #93-7927, 514 U.S. 419 (1995)," *See* "Giglio v. United States. 450 U.S. 150 (1972)." *See* "People v. Gray 150 Misc.2d 852 (1991)." *See* United States v. Blanco, 103 #03-10390, 2004 U.S. App. Lexis 26815, 392 F.3d 382 (9th Cir. 2004), "exculpatory evidence cannot be kept out of the hands of the defense just because the prosecutor does not have it, where an investigating agency does. That would undermine Brady by allowing the investigating agency to prevent production by keeping a report out of the prosecutor's hands until the agency decided the prosecutor ought to have it, and by allowing the prosecutor to tell the investigators not to give him certain materials unless he asked for them." *See* "A prosecutor has a duty to learn of favorable evidence known to other prosecution and investigative agencies acting on the prosecution's behalf, including police agencies." Kyles v.Whitley (1995) 514 U.S. 419, 437-438. *See* "There is a duty on the part of the prosecution, even in the absence of a request therefore, to disclose all substantial material evidence favorable to an accused, whether such evidence relates directly to the question of guilt, to matters relevant to punishment, or to the credibility of a material witness." People v. Ruthford (1975) 14 Cal.3rd 399, 406. *See* "The suppression of favorable evidence produces "prejudice" to a defendant only if the suppressed evidence is "material." Evidence is "material" only if "'there is a reasonable probability' that the result of the trial would have been different if the suppressed [evidence] had been disclosed to the defense." Strickler v. Greene, supra. at pp. 289.

177. This complaint demonstrates and establishes that Defendants selectively disregarded Plaintiff's video evidence to falsify, enforce and prosecute malicious and baseless charges against Plaintiff with deliberate indifference.

178. This establishes that Joe Governali and Defendants selectively withheld and fraudulently concealed existing material facts that Plaintiff's video footage demonstrates, and continuously forged counterfeit instruments and allegations to DANY without any veracity.

179. This complaint demonstrates and establishes that Joe Governali colluded with Defendants to obstruct justice with reckless disregard for truth.

180. This complaint demonstrates and establishes that Joe Governali and Defendants conspired to mislead DANY, thus conspiring to interfere with Plaintiff's protected civil rights.

181. This complaint demonstrates and establishes that Joe Governali and Defendants mutually forged accusatory instruments, notwithstanding the mutual concealment and disregard for exculpatory facts. *See* ... At most, probable cause may be defeated if the officer "deliberately disregard[s] facts known to him which establish justification." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir.2003) (emphasis added). ...the officer may not "deliberately disregard facts known to him which establish" an exculpatory defense. Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003). Indeed, an officer's awareness of the facts supporting an exculpatory defense may eliminate probable cause. Id. at 135. ...Panetta v. Crowley, 460 F.3d 388, 398 (2d Cir.2006) ("Once an officer has probable cause, he or she is neither required nor allowed to continue investigating, sifting and weighing information.") (internal quotation marks omitted). *See* "Brady is violated

when the government fails to turn over even evidence that is "known only to police investigators and not to the prosecutor." Youngblood v. West Virginia, 547 U.S. 867 (2006).

182. This complaint demonstrates and establishes with a preponderance of evidence that Officer Martinez and Joe Governali knowingly forged accusatory instrument(s) against the Plaintiff with deliberate omissions of material facts to interfere with the Plaintiff's Substantive and Procedural Due Process Rights and Plaintiff's protected First, Fourth, Fifth and Fourteenth Amendment rights as guaranteed by the United States Constitution and established laws.

183. This complaint demonstrates and establishes that Joe Governali and the NYPD submitted perjured instruments to DANY and withheld material facts with malicious indifference and reckless disregard for truth. *See* "Brady is violated when the government fails to turn over even evidence that is "known only to police investigators and not to the prosecutor." Youngblood v. West Virginia, 547 U.S. 867 (2006). *See* "2009 (9) AELE Mo. L. J. 101 ISSN 1935-0007 Civil Liability Law Section – September 2009 Civil Liability for Police Failure to Disclose Exculpatory Evidence: Brady v. Maryland: the Prosecutor's Duty The Duty to Disclose Applied to Law Enforcement."

184. This complaint demonstrates and establishes the aforementioned facts by comparison of the accusatory instrument(s) against Plaintiff's recorded video of Joe Governali's and NYPD's acts. The video exhibits will bring forth the facially insufficient, unconstitutional, hearsay, invalid, defective, counterfeit, perjured and fraudulent nature of the accusatory instrument(s), notwithstanding the exceptionally serious misconduct of law enforcement personnel in the alleged investigation, unconstitutional arrest and prosecution of the Plaintiff.

185. Defendants intentionally and knowingly disregarded investigations and concealed material facts of Governali's physical attack(s) against the Plaintiff and presented Joe Governali as a false witness to DANY – with false information. The accusatory instruments violate the Plaintiff's protected Constitutional Rights, notwithstanding that Joe Governali and Police Officers knowingly, intentionally and maliciously endorsed and forged the accusatory instruments on false pretenses. These irrefutable facts are demonstrated by the video exhibits that the Plaintiff furnished.

## SOME BACKGROUND HISTORY ABOUT THE DEFENDANT

186. The Plaintiff has endured multiple attacks against his reputation by maliciously inclined, envious and hostile individuals, including state actors of the City of New York and very hostile, malicious, dishonest, deceptive and criminal entities throughout the 47Th Street Diamond District over the course of 30 years. Joe Governali's abusive demeanor and collusion with the NYPD is no exception. The Plaintiff caries a video recorder to capture the integrity of adverse situations on behalf of the predictable hostility against him.

187. The Plaintiff is an expert diamond setter, and highly experienced in jewelry work and true art of Diamond Setting since his adolescence, 1984. The Plaintiff is also a legally copyright protected book author on the art of traditional Pave Diamond Setting, "Pave Secrets©," registered in the Library of Congress, by the "Pave Secrets©" Title. The Plaintiff has worked with Jewelry since the time of his apprenticeship beginning in 1984 and has performed countless works and set thousands of diamonds and gemstones for many clients throughout the years and has never been cited or convicted for any crime in the Jewelry industry, despite many attempts of competitive rivals to frame him, lure him, entrap him and displace him from the Jewelry trade. This pattern of activity also includes members of the New York City Police Department and

the City of New York and the District Attorney of Queens County, who all know that the Plaintiff is a Diamond Setter. These are irrefutable and indisputable facts.

188. Plaintiff's Copyright Registration Numbers for "Pave Secrets©" and corresponding dates are provided, below as they appear on the Library of Congress website:

"Registration Number / Date: TX0006007963 / 2004-08-06
Registration Number / Date: VAu000593572 / 2003-05-07
Registration Number / Date: TX0005999100 / 2004-07-30
Registration Number / Date: VAu000579591 / 2003-03-04"

189. The Plaintiff is an Expert Diamond Setter and known by multiple parties in and out of the New York City Diamond District, including Joe Governali himself.

190. The Plaintiff's expert status in the Jewelry industry is known by the New York State Department of Health, Health and Hospitals Corporation, The Church of Scientology, The Citizen's Commission on Human Rights, The Federal Bureau of Investigation (FBI), Central Intelligence Agency (CIA), The United Nations High Commissioner for Human Rights, The City of New York, The Federal Courts, The NYPD, Police Internal Affairs, The Attorney General, United States Attorney, The District Attorney of Queens County, Senator Tony Avella, Invoiced Clients, The CCRB, Defendants Neighbors, multiple News Agencies, The Press, The NSA, Congress, Governor Cuomo and the Plaintiff's family members all know this to be fact and have been informed by the Plaintiff, notwithstanding and concurrent with existing exculpatory information at all times.

191. The Plaintiff is absolutely confident of his expertise in the field of mechanics and Diamond Setting and he challenges any government employee to prove him wrong. There is not a single allegation against the Plaintiff by any source in or out of the Diamond District that has any veracity against Plaintiff's integrity.

192. In addition to these facts the Plaintiff has sustained and endured multiple attacks to his standing in the community by malicious and hostile parties, organized criminal enterprises and their members operating inside the Jewelry industry that have deliberately conspired with multiple malicious, covert and deceptive methods and slanderous accusations to attack, blacklist, ostracize, frame and defame the character of the Plaintiff, including but not limited to parties that Plaintiff notified above. The Plaintiff is also registered with the New York City Fire Department as a Jewelry torch operator.

193. All charges against the Plaintiff are without any veracity, hearsay, defective, frivolous, malicious, fraudulent, unjustified, facially insufficient, false, misleading and retaliatory. The Defendants did not conduct a full, fair and impartial investigations into existing material facts and deliberately disregarded existing exculpatory information to present unconstitutional charges.

194. This complaint demonstrates that the Plaintiff is innocent and not guilty of any allegations against him. This complaint also demonstrates that Defendants intentionally disregarded relevant material facts to mislead and defraud the criminal court with deliberate perjury.

195. The charges documented on the alleged accusatory instrument(s) against the Plaintiff are fraudulent, malicious, baseless, without any substance, insufficient, false, frivolous, counterfeit and unconstitutionally manufactured by Defendants and Joe Governali to illegally frame the Plaintiff.

196. Joe Governali's/Defendant's accusations are all omissions of fact. The Defendants are maliciously indifferent and overtly conspiring frauds that deliberately submitted false instruments to DANY with intent to mislead and maliciously abuse process. Governali and the NYPD officers are culpable for their acts under the doctrine of Dirty Hands. And they intentionally mislead DANY to influence unconstitutional verdicts against the Plaintiff with malicious indifference. This is an absolute fact.

197. According to information and belief Joe Governali has been recruited into a covert conspiracy against the Plaintiff. And Joe Governali is also attempting to recruit others into his planned and premeditated conspiracy against the Plaintiff, including but not limited to abusing Defendant agencies/resources, with reckless indifference. Governali intentionally, deliberately and fraudulently falsified allegations against the Plaintiff and fraudulently concealed his motives and acts to justify his resentment against the Plaintiff's honest and forthright character that Governali is even a material witness to.

198. The allegations against the Plaintiff are designed to sabotage and frame him and shift scrutiny away from the culpable perpetrators' illegal intentional/unconstitutional/criminal/fraudulent activities. This pattern of fraud also includes multiple members of the New York City Police Department, notwithstanding. Members of the NYPD 18Th Precinct targeted the Plaintiff and simultaneously falsified information, notwithstanding concurrently existing exculpatory information that is irrefutable. The New York City Government, in conjunction with multiple third parties is engaged in a smear campaign against the Plaintiff. All charges alleged in Docket # 2016NY073858 are maliciously perjured in furtherance of this fraudulently concealed and smear campaign. The Plaintiff will and can prove that the allegations were manufactured through a fraudulently concealed pattern of illegal activities to frame him, derail, withhold, suppress, camouflage and conceal known and existing exculpatory facts that the FBI, NYPD, Federal Courts and City of New York are even aware. This is an irrefutable fact.

199. The City of New York, NYPD and Federal Courts are fully aware that the Plaintiff shares information with the FBI. And the City of New York has openly admitted this on court documents accompanied with fraudulently concealed "Brady Materials," overt falsifications and fraudulent concealment of existing exculpatory facts, concurrently. *See*, "Brady v. Maryland, #490, 373 U.S. 83 (1963)," *See* "Kyles v. Whitley, #93-7927, 514 U.S. 419 (1995)," *See* "Giglio v. United States. 450 U.S. 150 (1972)." *See* "People v. Gray 150 Misc.2d 852 (1991)." *See* United States v. Blanco, 103 #03-10390, 2004 U.S. App. Lexis 26815, 392 F.3d 382 (9th Cir. 2004), "exculpatory evidence cannot be kept out of the hands of the defense just because the prosecutor does not have it, where an investigating agency does. That would undermine Brady by allowing the investigating agency to prevent production by keeping a report out of the prosecutor's hands until the agency decided the prosecutor ought to have it, and by allowing the prosecutor to tell the investigators not to give him certain materials unless he asked for them."

200. Exculpatory information of material facts is unconstitutionally being withheld, tampered with and disregarded by the City of New York; and this docket is a direct result of the unconstitutional acts of the NYPD/City of New York through a widespread pattern of abuse against the Plaintiff.

201. The City of New York/NYPD is directly creating and using false third party allegations, illegal and unconstitutional methods to influence verdicts, frame, and prosecute the Plaintiff, without any probable cause, notwithstanding their intentional concealment of exculpatory information that they are on notice about and sabotaging with malicious indifference and continual prejudice against the Plaintiff, outside of the legitimate ends of legal process.

202. Joe Governali/NYPD/City of New York are reckless frauds. The Plaintiff is prepared to challenge them all, with existing exculpatory evidence against their lies before this court to bring about the truths that they tampered with and withheld. Their deliberate omissions will all fail against the Plaintiff's integrity, transparency and evidence. And their deliberate lies and abuses will be exposed in official proceeding. The Plaintiff is fully confident of these facts, with outstanding supporting evidence. The Criminal Court Prosecution/Police/City of New York is obligated to disclose material exculpatory facts, including any and all alleged witnesses. *See*, "Brady v. Maryland, #490, 373 U.S. 83 (1963)," *See* "Kyles v. Whitley, #93-7927, 514 U.S. 419 (1995)," *See* "Giglio v. United States. 450 U.S. 150 (1972)." *See* "People v. Gray 150 Misc.2d 852 (1991)." *See* United States v. Blanco, 103 #03-10390, 2004 U.S. App. Lexis 26815, 392 F.3d 382 (9th Cir. 2004), "exculpatory evidence cannot be kept out of the hands of the defense just because the prosecutor does not have it, where an investigating agency does. That would undermine Brady by allowing the investigating agency to prevent production by keeping a report out of the prosecutor's hands until the agency decided the prosecutor ought to have it, and by allowing the prosecutor to tell the investigators not to give him certain materials unless he asked for them."

203. Joe Governali illegally, intentionally and deliberately assaulted and attacked the Plaintiff, withheld his acts and falsified instruments with Defendants and/or Defendants acquiesced with Governali for malicious and retaliatory purposes.

204. Joe Governali is the violent aggressor that attacked the Plaintiff. Joe Governali mounted a violent physical attack upon the Plaintiff with premeditated, planned, malicious intent. Joe Governali endangered the Plaintiff's safety by direct threat; and the Plaintiff's justifiable right to self defense was necessitated as a result of that direct threat to his safety. All charges alleged against the Plaintiff are false, misleading, unsubstantiated, unconstitutional, fraudulent and part in parcel of a wider and broader conspiracy that Joe Governali is member with the NYPD.

205. Joe Governali voluntarily and recklessly placed his own well being at risk by violently attacking the Plaintiff. This is an irrefutable video recorded fact. Joe Governali knew or should have known that any reasonable person has the right to self defense with justifiable necessity. And Joe Governali allegedly communicated non existing falsifications on the accusatory instrument(s) and DANY, concurrently proving that Defendants disregarded exculpatory facts, did not conduct an investigation and knowingly disregarded evidence to shield themselves from liability. Video "b" proves this to be fact with documentary videos that the Plaintiff has furnished in this motion.

206. The Plaintiff video recorded Joe Governali's statements, physical assaults and intentional attempts to influence others and submits the video evidence with this complaint to demonstrate the falsehood of charges and allegations that the Defendants conspired to produce, without an investigation and without probable cause.

207. The Plaintiff did not engage in any illegal conduct in any way shape or form. The Plaintiff was/is justified in necessitated self defense and also informed the Defendant officers of this fact. The Defendants deliberately disregarded the Plaintiff's truthful report(s) and also disregarded his existing video evidence same. Therefore the Defendants did not conduct an investigation, disregarded material facts and aligned themselves with the false witness of Joe Governali to gain collateral objective outside of the legitimate ends of legal process.

208. Joe Governali's/Officer Martinez's allegations to DANY demonstrates evidence tampering and overt omissions of material facts with deliberate indifference and reckless disregard for truth.

209. It should also be known that on November 22, 2016 claimant received an email notification from YouTube of an intentionally, libelous, defamatory, hostile and hateful comment that Joe Governali maliciously posted on one of claimant's YouTube videos, quoted below with a screenshot of the email following:

*"WHAT KIND OF PSYCHOPATH FILMS HIS OWN PARENTS .....TO RAFI EVERYONE IS A LIAR, CHEAT, CON ARTIST, AND LIVES IN HIS OWN LITTLE INSANE WORLD GOING AROUND 47TH STREET HARASSING AND THREATENING PEOPLE BECAUSE THEY EITHER FIRED HIM FOR LACK OF WORK OR INSUBORDINATION . COMPLETE MORON, MORON, MORON, ANTI SEMITE .....WHO'S THREATENING HIS OWN PARENTS .....<br />RAFI BELONGS IN AN INSANE ASYLUM."*
See screenshot of the email below:



210. Governali's above comment indicates a rude, insolent and hateful vendetta against the Plaintiff. With regard to Governali's comment above. *See* Docket "11-cv-00355 (ENV) (SMG), Stepanian v. Stepanian et, al." *See* Docket "15-cv-01943 (JG) (SMG), Stepanian v. City of New York, et al."

211. The video(s) also demonstrate that Joe Governali deliberately communicated false [influencing allegations to others, notwithstanding that immediately after walking away Joe Governali turned about, violently grabbed and attacked the Plaintiff and continued to unreasonably violently attack the Plaintiff, endangering the Plaintiff's safety and of others. The Plaintiff was yelling for someone to call the police, while Governali was attacking him. And Governali continued. This is an indisputable and irrefutable fact. The Plaintiff was obligated to defend himself from Governali's violence.

212. The Plaintiff's right to defend himself was justified and necessary, beyond a reasonable doubt. The Plaintiff's video footage makes evident that all reports and charges were deliberately falsified, counterfeit and used as false instruments and prejudice against the Plaintiff.

213. The Plaintiff's right to video record for evidence was also justified and necessitated for evidentiary exhibits that the officer(s) failed to investigate and disregarded with malicious indifference. Joe Governali clearly expressed malice towards the Plaintiff for exercising his right to gather evidence. Governali also demonstrated his attempt to tamper with Plaintiff's evidence by striking the camera.

214. Governali lacked any justification for his overt attacks and violent aggression against the Plaintiff.

215. Joe Governali/NYPD/City of New York lacked any justification for violating the Plaintiff's protected Substantive and Procedural Due Process rights and his First, Fourth, Fifth and Fourteenth Amendment Protected Constitutional

Rights. "Exculpatory evidence" includes evidence reflecting on whether witnesses against the accused are credible, which might be used by the Plaintiff's attorney at trial for purposes of impeachment." Giglio v. United States. 450 U.S. 150 (1972).

216. The officers conspired and planned to issue the DAT with false charges and did not conduct proper and impartial investigations that the officer in video "b" alleged. No officer at the 18Th precinct can demonstrate a review of the Plaintiff's videos in the course of their alleged investigation. Plaintiff was told he "might be arrested" and not properly informed that he was being arrested. The officers did not review the entirety of Plaintiff's videos on 47Th Street or in the 18Th Precinct. In the 18Th precinct there are surveillance cameras as well as on 47Th Street Diamond District. Should the officers challenge that they did review the videos Brady Rule/ Brady Disclosure mandates that the officers disclose the reviewed footage in the course of their alleged investigation of material facts: "The Brady Rule, named for Brady v. Maryland, 373 U.S. 83 (1963), requires prosecutors to disclose materially exculpatory evidence in the government's possession to the defense." *See* "A prosecutor has a duty to learn of favorable evidence known to other prosecution and investigative agencies acting on the prosecution's behalf, including police agencies." Kyles v. Whitley (1995) 514 U.S. 419, 437-438). *See* "Exculpatory evidence cannot be kept out of the hands of the defense just because the prosecutor does not have it, where an investigating agency does. That would undermine Brady by allowing the investigating agency to prevent production by keeping a report out of the prosecutor's hands until the agency decided the prosecutor ought to have it, and by allowing the prosecutor to tell the investigators not to give him certain materials unless he asked for them." United States v. Blanco, 103 #03-10390, 2004 U.S. App. Lexis 26815, 392 F.3d 382 (9th Cir. 2004)."

217. The Officers failed to conduct proper and impartial investigations into material facts and acted outside of the scope of their duties to falsify charges against the Plaintiff with malicious, retaliatory intent and reckless disregard for truth.

218. The Plaintiff offered his video to Defendant officers at the scene. Defendants did not review the entirety of the videos in the course of their alleged investigation, and withheld any reference. *See* "…At most, probable cause may be defeated if the officer "deliberately disregard[s] facts known to him which establish justification." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir.2003) (emphasis added). …the officer may not "deliberately disregard facts known to him which establish" an exculpatory defense. Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003). Indeed, an officer's awareness of the facts supporting an exculpatory defense may eliminate probable cause. Id. at 135. Panetta v. Crowley, 460 F.3d 388, 398 (2d Cir.2006) ("Once an officer has probable cause, he or she is neither required nor allowed to continue investigating, sifting and weighing information.") (internal quotation marks omitted). At most, probable cause may be defeated if the officer "deliberately disregard[s] facts known to him which establish justification." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir.2003) (emphasis added)."

219. And at no time did any Police Officer(s) act to protect the Constitutional Rights, privileges or immunities of the Plaintiff.

220. Joe Governali was/is the violent aggressor that necessitated Plaintiff's right of self defense at all times. The Plaintiff acted in self defense at all times given exposure to Governali's deliberate statements, acts, physical assaults and attacks against the Plaintiff.

221. Governali attempted to illegally frame and entrap the Plaintiff with his intentional, willful, voluntary, malicious conduct and intentional violence. And Governali also presented a direct threat to the safety of the Plaintiff.

222. Joe Governali premeditated and executed his assault on the Plaintiff with repeated attempts and the officers colluded with Governali to retaliate against the Plaintiff. The charges against the Plaintiff are false and created by the NYPD to influence unconstitutional verdicts against the Plaintiff. And the first time that Joe Governali became hostile and used malicious lies against the Plaintiff was in 2011, when the Plaintiff refused to teach him how to set diamond jewelry, described more fully below.

## GOVERNALI'S HISTORY WITH DEFENDANT

223. The following points are historical facts. Joe Governali lured Plaintiff into Elias Vayas office at 2 west 47Th Street ("EV Jewelry") with an alleged reference that "Plaintiff is a really good Diamond Setter in 2011." Plaintiff knew another person, Demitri, who worked from that office, because an old client of Plaintiff's used to meet him there about 1992 to give him Diamond Setting/jewelry work to perform at home.

224. Joe Governali requested of Plaintiff to teach him how to set diamonds, while Elias was giving Plaintiff some low grade production setting work.

225. Plaintiff refused to teach Joe Governali how to set diamonds and Joe Governali awkwardly desired to learn how to set diamonds, for some reason. After Plaintiff's refusal, Governali turned to Dimitri and requested to learn how to carve wax models. Demitri was a Master Wax Model Maker.

226. Joe Governali was allegedly practicing to make wax models and experiencing fatigue and complaining of hand pain from dexterous hand tools.

227. Plaintiff offered Governali a Transcutaneous Electronic Nerve Stimulator ("TENS") to relieve his hand pain. Plaintiff brought the TENS to Governali and he placed the adhesive electrodes on his affected hand. Governali's hair and skin cells were/are apparently stuck on the adhesive electrodes. In addition Joe Governali was allegedly Skyping China for buying and selling Illuminated Magnifying Loops as well from the EV office. Joe Governali's hairs and skin are stuck to the adhesive electrodes of the "TENS" device.

228. Governali grew angry at Plaintiff's refusal to teach him to set diamonds and retaliated against the Plaintiff with malicious accusations and began disseminating slanderous allegations to Elias that Plaintiff was stealing his loop customers, with requests to terminate Plaintiff from Elias' office (it should be noted that Governali introduced the Plaintiff to set diamonds for Elias and not for teaching purposes).

229. When Plaintiff confronted Governali about allegations of stealing his loop customers Governali responded "You'll do anything for money." And he would not apologize to Plaintiff for making the slanderous allegation(s).

230. At this time Governali had a strange orange and silver colored cell phone. From that cell phone he also called Plaintiff a few times in 2011 and after for purposes of exploiting money making opportunities. It was very strange that he would call Plaintiff after making his allegations.

231. Plaintiff never knew Joe Governali until he appeared on 47Th Street in 2011. The Plaintiff is an expert diamond setter and has worked for many individuals around the Manhattan Diamond District since 1984 and performed multiple works

of various types that he is trusted for. The Plaintiff is also currently known as the "New York City Gold Miner" that has earned him celebrity recognition for mining gold from the Diamond District sidewalks. The Plaintiff was noted in the New York Post in June 2011 for this.

232. Governali's references about Plaintiff's diamond setting to Elias Vayas was very strange and peculiar. Plaintiff never performed any work for Governali or had any affiliation with him at all. Joe Governali also presented an alleged ID card that he was an NGO (Non Governmental Organization) on assignment in Siera Leone, Africa and stated that he machine gunned and killed some African children. He also alleged that they were trying to shoot him.

233. Joe Governali also attempted to use the Plaintiff to gain clients for himself to sell merchandise and obtain orders for tools and jewels. Joe Governali was appearing in other places that the Plaintiff sought work, such as 64 West 48Th Street. Governali was concurrently disseminating false and defamatory information about the Plaintiff and also reprimanded him one day, for no reason, while RTL Television filmed the Plaintiff mining gold from the 47th Street sidewalks. It was clear that Governali was indifferent towards the Plaintiff and he exhibited a very deceptive character, with overt dishonesty. Joe Governali's contradictory acts presented a double sided and deceptive personality that became progressively, overtly and maliciously sadistic towards the Plaintiff and Governali was becoming preoccupied with defaming, harming and provoking trouble with the Plaintiff.

234. The prosecution must disclose any and all exculpatory information, alleged witnesses and police informants to the defense. _See_, under CPL § 240.20, Brady v. Maryland, 373 US 83 (1963), and People v. Rosario, 9 NY2d 286 (1961). _See_ "Kyles v. Whitley, #93-7927, 514 U.S. 419 (1995)," _See_ "Giglio v. United States. 450 U.S. 150 (1972)." _See_ "People v. Gray 150 Misc.2d 852 (1991)."

235. The prosecution/police officers, including but not limited to P.O Martinez, Shield # 10239, and three accompanying John Doe P.Os that were at the location of 36 west 47 Street, New York, New York, 10036, must disclose the activities conducted during their alleged investigation of the Plaintiff, while he was unconstitutionally detained and imprisoned in the 18Th Precinct, in violation of his First, Fourth, Fifth and Fourteenth Amendment protected constitutional rights and Substantive and Procedural Due Process Rights. _See_, "Brady v. Maryland, #490, 373 U.S. 83 (1963)," _See_ "Kyles v. Whitley, #93-7927, 514 U.S. 419 (1995)," _See_ "Giglio v. United States. 450 U.S. 150 (1972)." _See_ "People v. Gray 150 Misc.2d 852 (1991)."

236. The Prosecution must prove that the police officers' formal investigation included a review of the Plaintiff's video at the 18Th Precinct with video footage of the 18Th Precinct surveillance cameras while the Plaintiff was illegally taken into custody and imprisoned. This must be demonstrated by the 18Th precinct video footage and disclosed to the defense to prove to this court that the alleged investigation was not partial and without bias against the Plaintiff. The Prosecution must provide and disclose all Brady material in its possession to the defense including the material facts that were not disclosed by the police. _See_, "Brady v. Maryland, #490, 373 U.S. 83 (1963)," _See_ "Kyles v. Whitley, #93-7927, 514 U.S. 419 (1995)," _See_ "Giglio v. United States. 450 U.S. 150 (1972)."_See_ United States v. Blanco, 103 #03-10390, 2004 U.S. App. Lexis 26815, 392 F.3d 382 (9th Cir. 2004), "exculpatory evidence cannot be kept out of the hands of the defense just because the prosecutor does not have it, where an investigating agency does. That would undermine Brady by allowing the investigating agency to prevent production by keeping a report out of the prosecutor's hands until the agency

decided the prosecutor ought to have it, and by allowing the prosecutor to tell the investigators not to give him certain materials unless he asked for them."

237. This paragraph emphasizes Plaintiff's footage of Governali's intentional assault and the 18Th precinct surveillance cameras that must have recorded the following events: Upon entering the 18Th Precinct with P.O. Martinez and the other P.O., the Plaintiff had handcuffs behind his back, unconstitutionally searched/seized.

238. Martinez searched the Plaintiff's blue jacket pockets and pants, consisting of his keys, $133.50, Driver's License, Subway Metrocard and video camera that was in a brown leather pouch. Officer Martinez announced and displayed the items and inventoried them with the desk Sergeant. Martinez then placed all items back into the Plaintiff's coat pockets, including the video camera (that contained the footage of Governali's attack/assault on the Plaintiff. Plaintiff's camera was placed into his pocket, where it remained and was never reviewed for exculpatory evidence and or material facts. _See_, "Brady v. Maryland, #490, 373 U.S. 83 (1963)," _See_ "Kyles v. Whitley, #93-7927, 514 U.S. 419 (1995)," _See_ "Giglio v. United States. 450 U.S. 150 (1972)." _See_ "People v. Gray 150 Misc.2d 852 (1991)."

239. "The U.S. Supreme Court, in the landmark case of Brady v. Maryland, #490, 373 U.S. 83 (1963), established clearly that prosecutors have an affirmative duty, as a matter of constitutional law, to disclose all known exculpatory evidence to the accused in a criminal proceeding. If the prosecution suppresses evidence favorable to an accused, it violates due process as guaranteed by the Fourteenth Amendment to the U.S. Constitution." _See_ "2009 (9) AELE Mo. L. J. 101 ISSN 1935-0007 Civil Liability Law Section -- September 2009 Civil Liability for Police Failure to Disclose Exculpatory Evidence: Brady v. Maryland: the Prosecutor's Duty The Duty to Disclose Applied to Law Enforcement."

240. At all times herein Joe Governali and Defendants under the employment of the City of New York, deprived Plaintiff of the equal protection, equal privileges and immunities under the laws and thereby violated Plaintiff's Protected First, Fourth, Fifth and Fourteenth Amendment Rights as guaranteed by the United States Constitution, cause in fact and proximate. _See_ "Brady is violated when the government fails to turn over even evidence that is "known only to police investigators and not to the prosecutor." Youngblood v. West Virginia, 547 U.S. 867 (2006). _See_ "Only by the filing of an accusatory instrument with a criminal court may a criminal action be commenced (CPL §§1.20[16], 100.05; People v. Farkas, 16 NY3d 190, 193 [2011]). Obviously, a legally or facially insufficient accusatory instrument cannot be the basis to commence a criminal action. (See People v. Hightower, 18 NY3d 249, 254 [2011] [the failure of an accusatory instrument to allege facts, which provide reasonable cause to believe a Plaintiff committed the offense charged, is a jurisdictional defect, "implicating the integrity of the process," and should be dismissed] [citations omitted])."

## CLAIMS FOR RELIEF FOR THE DEPRIVATION OF HIS RIGHTS UNDER
## THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983

241. Plaintiff restates and realleges the allegations contained in ¶¶ 1 through 240 above as if fully set forth and incorporates them by reference.

242. By the Defendants' arbitrary and/or capricious conduct and actions and/or omissions in depriving Plaintiff of his freedom to be let alone, to move freely, and to enjoy his property, in maliciously prosecuting him on the basis of false and/or untrustworthy information, in falsely arresting him, in assaulting and battering him, in detaining him, in abusing process against him, in retaliating against him for the exercise of constitutionally protected rights, in inflicting emotional

distress upon him, in violating his rights to due process and equal protection, and/or for failing to remedy the aforementioned violations after having witnessed them or having been informed of them by report, Defendants chilled and created the risk of chilling conduct protected by the First Amendment, and/or by failing properly to train, supervise, or discipline employees of The City Of New York under their supervision, Defendants, acting under color of law and without lawful justification, intentionally, maliciously, and/or with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, deprived Plaintiff of the equal protection of the laws and/or of equal privileges and immunities under the laws, and thereby caused injury and damage in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. § 1983, §§ 1985(2) & (3) and § 1986 and the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

243. All of the aforementioned acts of Defendants' and their agents, servants, and employees were carried out under color of state law, while Defendants were acting in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto, under the supervision of ranking officers of said department, pursuant to the customs, usage, practices, procedures, and the rules of The City and the NYPD, and/or Defendants, collectively and individually, engaged in conduct that constituted a custom, usage, practice, procedure or rule of The City of New York and enforced under color of law.

244. As a result of the foregoing, Plaintiff was deprived of his liberty and property and First Amendment rights, suffered bodily pain and suffering, psychological and emotional injury, humiliation, costs and expenses, and was otherwise damaged and injured.

245. As a result of Defendants' conduct Plaintiff was subjected to illegal, improper, and false arrest by defendants and taken into custody and caused to be falsely imprisoned, detained, and confined, without any probable cause, privilege, or consent.

246. As a result of the foregoing, Plaintiff was deprived of his liberty and property and First Amendment rights, suffered bodily pain and suffering, psychological and emotional injury, humiliation, costs and expenses, and was otherwise damaged and injured.

247. The level of force employed by defendants was objectively unreasonable and in violation of Plaintiff's constitutional rights.

248. As a result of the foregoing, Plaintiff was subjected to excessive force and sustained physical and emotional pain, injury emotional injury, humiliation, costs and expenses, and was otherwise damaged and injured.

249. In assaulting, battering, arresting and detaining Plaintiff, in prosecuting Plaintiff, and in seizing and restricting access to Plaintiff's camera and property, and in implementing, enforcing, encouraging, sanctioning, and/or ratifying policies, practices, and/or customs, defendants violated Plaintiff's rights to free speech for redress of grievances peaceably in retaliation for his speaking out on a matter of public concern.

250. As a result of the foregoing, Plaintiff was deprived of his liberty and property and First Amendment rights, suffered bodily, pain and suffering, psychological and emotional injury, humiliation, costs and expenses, and was otherwise damaged and injured, and defendants chilled and created the risk of chilling conduct protected by the First Amendment.

251. Defendants issued legal process to place Plaintiff under arrest.

252. Defendants arrested Plaintiff in order to obtain a collateral objective outside the legitimate ends of the legal process.

253. Defendants acted with intent to do harm to Plaintiff without excuse or justification.

254. As a result of the foregoing, Plaintiff was deprived of his liberty and property and First Amendment rights, suffered bodily, pain and suffering, psychological and emotional injury, humiliation, costs and expenses, and was otherwise damaged and injured.

255. Defendants misrepresented and falsified evidence before the District Attorney of New York ("DANY").

256. Defendants did not make a complete and full statement of facts to DANY.

257. Defendants withheld exculpatory evidence from DANY.

258. Defendants were directly and actively involved in the initiation of criminal proceedings against Plaintiff.

259. Defendants lacked probable cause to initiate criminal proceedings against Plaintiff.

260. Defendants acted with malice in initiating criminal proceedings against Plaintiff.

261. Defendants were directly and actively involved in the continuation of criminal proceedings against Plaintiff.

262. Defendants lacked probable cause to continue criminal proceedings against Plaintiff.

263. Defendants acted with malice in continuing criminal proceedings against Plaintiff.

264. Defendants misrepresented and falsified evidence throughout all phases of the criminal proceedings.

265. As a result of the foregoing, Plaintiff was deprived of his liberty and property and First Amendment rights, suffered bodily pain and suffering, psychological and emotional injury, humiliation, costs and expenses, and was otherwise damaged and injured.

266. Defendants created false information against Plaintiff.

267. Defendants forwarded false information to prosecutors in the Office of the District Attorney of New York County.

268. Defendants misled the prosecutors and/or the Court by providing false information and/or testimony in initiating and throughout the criminal proceedings.

269. Defendants with deliberate indifference maliciously conspired to mislead the prosecutors and/or the Court by providing false information and/or testimony throughout the criminal proceedings to influence verdicts against the Plaintiff, to intimidate the Plaintiff and to deter the Plaintiff from testifying on pending matters.

270. Defendants failed to turn over exculpatory evidence and other materials to the prosecutor.

271. Defendants therefore violated Plaintiff' constitutional rights to fair trials under the Fifth and Fourteenth Amendments to the United States Constitution.

272. Defendants seized Plaintiff as "arrest evidence" and refused to release him.

273. Defendants refused to afford Plaintiff notice and an opportunity to be heard to challenge his seizure.

274. Defendants' seizure and retention of Plaintiff as "arrest evidence" without affording Plaintiff notice and an opportunity to be heard to challenge his seizure violated Plaintiff's constitutional rights to enjoy his property and to due process under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

275. Defendants' selective enforcement of "NYPL 120.00 00(1)" to arrest the Plaintiff violated Plaintiff's constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

276. Defendants' selective enforcement of "NYPL 120.00 00(2)," which was not indicated upon the DAT, dated 12/16/16, to arrest the Plaintiff violated Plaintiff's constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

277. Defendants' selective enforcement of "NYPL 110/120.00(1)," which was not indicated upon the DAT, dated 12/16/16, to arrest the Plaintiff violated Plaintiff's constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

278. Defendants' selective enforcement of "NYPL140.05," which was not indicated upon the DAT, dated 12/16/16, to arrest the Plaintiff violated Plaintiff's constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

279. Defendants' selective enforcement of "NYPL 240.26(1)," which was not indicated upon the DAT, dated 12/16/16, to arrest the Plaintiff violated Plaintiff's constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

280. Defendants' selective enforcement of "NYPL 120.00 00(2), NYPL 110/120.00(1), NYPL140.05, and NYPL240.26(1)," which was not indicated upon the DAT, dated 12/16/16, to arrest the Plaintiff violated Plaintiff's constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

281. Defendants' selective enforcement of NYPL "120.00 00(1), NYPL 120.00 00(2), NYPL 110/120.00(1), NYPL140.05, and NYPL 240.26(1)" against Plaintiff, but not others similarly situated, was invidiously discriminatory, malicious, purposeful, arbitrary, capricious and without any evidence, legal justification, probable cause and/or any veracity at all.

282. And Plaintiff's camera was illegally separated from him during the imprisonment, depriving him of liberty to film and record the activities of Defendants and any communications exchanged with the Plaintiff while falsely imprisoned. *See* Glik v. Cunniffe, 655 F.3d 78 (1st Cir. 2011) "A private citizen has the right to record video and audio of public officials in a public place … "

283. As a result of the foregoing plaintiff is entitled to compensatory damages in the sum of five million dollars ($5,000,000.00) and is further entitled to punitive damages against the individual defendants in the sum of five million dollars ($5,000,000.00).

WHEREFORE, plaintiff demands the following relief jointly and severally against all of the Defendants:

A.    An order requiring defendants to return to Plaintiff, or where necessary to expunge and/or destroy all records of fingerprints and other information taken in conjunction with Plaintiff' arrests, to remove from all records and databases and information systems maintained by defendants or his agents or partners any reference to Plaintiff's arrest, and to request that all law enforcement agencies and partners that have received such information destroy the same,

B.    Judgment in the sum of five million dollars ($5,000,000.00) in compensatory damages and five million dollars ($5,000,000.00) in punitive damages,

C.    Other such further relief injunctive and/or special as the Court may deem just and proper.

Raffi Stepanian
15-01 144ᵀʰ  Street
Whitestone, New York
          11357
Tel: (718) 747-1030

RESPECTFULLY SUBMITTED,

Dated:_____2/11/2017